FRANK H. KLEIN, PLAINTIFF-RESPONDENT, v. MILLSIDE FARMS, INC., ET AL., DEFENDANTS-APPELLANTS.

Argued November 12, 1951—Decided December 3, 1951.

242

*Mr. F. William Sutton* argued the cause for respondent.

*Mr. Louis B. LeDuc* argued the cause for appellants.

The opinion of the court was delivered by

CASE, J. The complaint sued for compensatory and punitive damages grounding in the slander of plaintiff's products, the hiring away of plaintiff's employees and the solicitation of plaintiff's customers. All of the defendants answered denying the allegations, and Millside Farms, Inc., counterclaimed for compensatory and punitive damages grounding in a libel upon its products as well as in slanders upon it and its products. The jury brought in a verdict of $25,000 for compensatory damages and $5,000 for punitive damages in favor of the plaintiff and against the defendants and a verdict of no cause for action on the defendant's counterclaim. A motion for a new trial was seasonably made and was denied by the court upon the condition that the plaintiff accept the reduced verdict of $9,000, consisting of $7,500 compensatory damages and $1,500 punitive damages. Plaintiff did so consent, and the judgment was amended accordingly. Shortly thereafter defendants made, and were denied, a further application for a new trial resting on recently discovered testimony. The appeal is from the judgment and the subsequent orders and is brought here on our own motion.

Millside Farms, Inc., is a pasteurizer of milk and a dealer at wholesale and retail in milk, cream, butter, eggs and other dairy products. The two individual defendants were employees of Millside. Plaintiff is a subdealer or retailer of

milk products who, from 1940 to April, 1947, bought his goods from Millside and sold them on Long Beach Island and the nearby mainland. About April 1, 1947, plaintiff notified Millside that he had chosen a new source of supply and, effective April 26, 1947, would no longer use defendant's products. Millside thereupon sought to retain, by direct sales, the Ocean County consumers of its products who had theretofore bought those products from plaintiff. There resulted a tense and bitter contest from which grew this litigation.

On April 18, 1947, plaintiff distributed through the mail, over his signature, to approximately 710 customers (users of Millside dairy products) a multigraphed letter which said in part:

"During the past year we have received an alarming increase in complaints on the part of our customers as to the deterioration of the quality of our milk, the trouble experienced in whipping the cream, and also that the tops of the bottles were not properly protected against outside contamination.

We have naturally noticed these failings ourselves and have tried by all means short of changing our source of supply to overcome them. However, these conditions continue to exist, and in order to maintain our reputation for high quality, and to prevent the loss of many of our best accounts we have finally been forced to change the source of our supply."

The letter did not mention the Millside name, but the identity of that company as the former supplier to Klein was known to the customers because its name was on all of the bottles and on every container that held its products.

Plaintiff's complaint contained four counts. The first count charged Millside with a malicious effort to destroy plaintiff's business by soliciting for the benefit of Millside, through the co-defendants and others, the business of plaintiff and by making false statements about plaintiff and his products and, further, by luring away and utilizing, in its efforts, plaintiff's employees. The second and third counts were against Millside's employees, Mahoney and Greenwood, respectively, and made comparable charges against them. The

fourth count brought in all three defendants, with like accusations, on a charge of conspiracy. The defendants answered, denying the charges, and Millside counterclaimed, charging that the letter of April 18 was a willful and a malicious libel upon defendant's products and that following the libel plaintiff disseminated further false charges against defendant and its products. Plaintiff answered the counterclaim by denying the allegations and by setting up that all allegations charged to have been.made were (1) true and (2) privileged.

The trial was protracted, and at its close the judge delivered a jury charge in which he said:

"It has been called to my attention, and I want you to know, that the gist of this action is the defamatory remarks or actions by the people that have been charged with them. As I have given you the law,. I feel that I have made it reasonably clear that taking away employees that are not under contract is not actionable. That is not the gist of this action. The action here is an action for slander of a product on both sides. Of course, one side has a letter that they claim slanders them. But that is the action. It is not the action of taking employees away from Mr. Klein that is the basis of this action. It was brought in to show the whole picture of the case, but that is not the action. In other words, if it had been merely a case of where Mr. Klein's employees left him and went with the Millside Farms and that was the end of it, there would be no action. It is the conduct subsequent thereto that is the gist of this action."

Therefore the case given to the jury was for defamation, a suit for slander brought by the plaintiff and a cross-suit for libel and slander brought by the defendant Millside. We find it unnecessary to review the proofs further than to say that while we find some proof, chiefly from plaintiff himself, which would tend to sustain a portion of so much of the Klein letter of April 18 as relates to the receipt of complaints, we find no substantial proof to sustain the assertion that faults had occurred within plaintiff's observation or knowledge and no substantial proof that the products had, in fact, the faults laid against them.

It is important in the view that we take of the case to know just what was left to the jury to decide so that we may form an opinion as to whether a bias on the part of the jury,

if the same existed, could have gone beyond the volume of damages awarded the plaintiff and affected the verdict in defendant's countersuit. The judge put it to the jury that Klein had admitted sending the letter and had asserted that the statements therein were true and that, therefore, the burden was upon him to prove that they were true; that the burden was upon Millside to prove that its loss of business was due to plaintiff's actions; that it was within the province of the jury to find that each party had made out a case against the other, and to bring in a verdict for Klein against the defendants and also a verdict in favor of Millside against Klein—"the same thing as if we had two different suits." Thus the case went to the jury on the assumption that there was evidence which would permit it to find for or against the plaintiff in his action and at the same time and independently of the determination therein to find for or against Millside on its counterclaim. That position was not challenged at the trial and error therein is not now argued. We accept it as the law of the case. *Cf. Cikatz v. Milwid*, 5 *N. J. Misc.* 768 (*Sup. Ct.* 1927); *Berg v. Rapid Motor Vehicle Co.*, 78 *N. J. L.* 724 (*E. & A.* 1910); *Berkowitz v. Lyons*, 98 *N. J. L.* 198 (*E. & A.* 1922); *Buckin v. Long Island R. Co.*, 286 *N. Y.* 146, 36 *N. E.* 2d 88 (*N. Y. Ct. of Apps.* 1941); *Morrison v. Bitting*, 198 *A.* 355 (*Sup. Ct. R. I.* 1938).

The court held that the $25,000 compensatory damage allowed by the jury to the plaintiff was "out of all proportion to the damages" he sustained as the result of the acts of the defendant. The verdict was between three and four times the amount of $7,500 which the judge considered was ample and which the plaintiff consented should be the amount of the judgment. The only rational explanation of that differential is that the jury was moved by mistake, passion, prejudice or partiality.

In *Hager v. Weber*, 7 *N. J.* 201 (1951), the jury had brought in a verdict for the plaintiff in the amount of $6,500. Defendant moved for a new trial on the asserted ground that the judgment was against the weight of the

evidence and was excessive and resulted from mistake, passion or prejudice. The trial court denied the motion. The Appellate Division on defendant's appeal found that the verdict was clearly excessive and accordingly reduced the verdict to $3,500 with direction that there should be a new trial as to damages if plaintiff should refuse to consent to the reduction. Plaintiff did refuse and sought and was granted permission to appeal to this court. The question arose whether the verdict for $6,500, since it should not have exceeded $3,500, necessarily gave rise to the inference that it was the result of mistake, passion, prejudice or partiality, and we held that it did. Our *Rule* 1:2–20 was later amended to provide that on a review of any cause involving issues of fact determined by the verdict of a jury the contention that the verdict was contrary to the weight of the evidence shall not be advanced or entertained unless application for a new trial on that ground was first made to the trial court and denied, but that a verdict of a jury shall be set aside as against the weight of the evidence if, having given due regard to the opportunity of the trial court and the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion. *Cf. Bazinsky v. Conklin,* 8 *N. J.* 40 (1951). In the instant case application for a new trial on grounds including a charge that the verdict was the product of passion, bias and prejudice was made and denied; and we have given due regard to the opportunity of the trial court and the jury to pass upon the credibility of the witnesses. We are nevertheless convinced that the verdict was influenced by those improper factors. A verdict so reached should not be allowed to stand. If it be that the entire evil is removed by a reduction in the amount of the verdict or by a new trial as to damages only, then those respective remedies will suffice; but where, as here, the vitiating influence has a wider compass a whole new trial should be granted.

Even if we assume that the reduction of the verdict to the amount presently fixed in the amended judgment accurately

corrects the disposition of the plaintiff's case, it does not counteract the factor of bias in the consideration of Millside's suit against the plaintiff. The charge made by plaintiff in writing against Millside was indeed serious. It was a representation to the consumers of Millside's product that Millside, whose chief function was to process milk in such a way as to destroy undesirable bacteria, did not so package its product as to protect it from outside contamination and was so negligent in its duty to the consumers of its product as not to remedy that fault upon notice. It was a damning accusation when made against a processor of and a dealer in milk. Under the court's charge the jury could have determined that the accusation was knowingly false and was deliberately circulated by plaintiff in a partially successful campaign to persuade consumers of the product to discontinue that consumption, to resist the solicitations of Millside and to accept a competitive product then being newly offered by plaintiff. Clearly, a jury biased for or against either plaintiff or Millside should not be permitted to determine that issue.

The judgment below will be reversed in its entirety and the record remanded to the end that a new trial be had on both claim and counterclaim.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, BURLING and ACKERSON—5.

*For affirmance*—Justice WACHENFELD.