22 N.J. Super. 229 (1952)
91 A.2d 768
BENJAMIN WAX, PLAINTIFF-RESPONDENT,
v.
WILLIAM ALTSHULER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1952.
Decided October 17, 1952.
*231 Before Judges McGEEHAN, BIGELOW and SMALLEY.
Mr. Archibald Kreiger argued the cause for the appellant (Mr. Martin Krugman, attorney).
Mr. Edward H. Saltzman argued the cause for the respondent (Mr. Arthur Minuskin, attorney).
The opinion of the court was delivered by SMALLEY, J.S.C. (temporarily assigned).
Defendant appeals from a reduced judgment entered in behalf of the plaintiff by the Passaic County Court. Plaintiff cross-appeals for a reinstatement of the original verdict.
*232 It seems that the trial judge properly characterized this malicious prosecution action when he stated, in his charge to the jury, that the whole thing arose "out of a rather trifling incident, and it has been, perhaps, magnified out of all proportion by reason of the very apparent ill-feeling between the two parties."
Because the attitude of the jury is an important factor in this appeal it will be helpful to summarize the events leading up to the incident complained of, since these were brought out at the trial and were undoubtedly considered by the jury in its determination.
Plaintiff is a sanitary inspector for the Board of Health of the City of Paterson. The premises which are involved here and which are managed by the defendant, are located at 21 Auburn Street in that city and owned by the Elsie Corporation, of which the defendant is an officer.
The ill feelings between plaintiff and defendant seem to have arisen in the latter part of 1950, when a complaint was made against defendant by one of his tenants in the local police court for a sanitary violation. Plaintiff appeared as a witness in this matter. Defendant was found guilty of this violation and given a small fine.
Early in 1951 it appeared that plaintiff made several inspections of the apartment house for alleged violations of the sanitary code, namely, a defective toilet and leaks on the roof. During these inspections defendant contends that plaintiff stamped roughly on the roof and when cautioned by defendant told him that he was out to make trouble for him. Plaintiff, on the other hand, claims that defendant told him that he was making too many inspections and threatened to have him discharged. Each of the parties denied that he has any ill feeling towards the other.
This was the relationship of the parties on February 21, 1951 when the spark was ignited which resulted in this litigation. Plaintiff testified that on that date, in response to a complaint made by one of the tenants concerning a wet ceiling, he was sent by his superior to 21 Auburn Street *233 to make an inspection of the apartment. Noticing that the ceiling was damp and bulging, he ascended a bench and testified that he merely touched the ceiling with his bare hands when a piece of plaster the size of a half dollar dropped into his palm.
Three witnesses who were present during the incident testified for the plaintiff to the effect that when he touched the ceiling, a piece fell about the size of his palm.
Defendant testified that he was informed of the incident by the tenant, Mrs. Wekar; that he visited the apartment about four or five days later and found a piece of plaster about two feet by two feet broken from the ceiling; that the superintendent, Mrs. Moran, told him that plaintiff had broken the plaster; that he notified Mr. Beery, his attorney, who advised him to make out a criminal complaint against the plaintiff.
Mrs. Moran, the superintendent of the apartment house, testified that she was present when the plaintiff was making his inspection, and that when plaintiff put his hand on the ceiling, a piece of plaster fell off, and that thereupon he put his finger through the hole to see if there was any dampness there.
Mr. Beery, defendant's attorney, testified that defendant notified him of the incident of February 21 and that on the basis of this and a conversation with Mrs. Moran, he advised defendant to file a criminal complaint against the plaintiff.
Pursuant to this advice, defendant on February 27, 1951 filed the criminal complaint in the criminal judicial district court charging that plaintiff did willfully and maliciously commit damage upon the property in question to the amount of $15 in violation of the provisions of R.S. 2:148-26 (now N.J.S. 2A:122-1).
As a result of this complaint, plaintiff was placed under arrest, fingerprinted, photographed in his inspector's uniform with a number emblazoned on his chest, and released on his own recognizance on the signing of a $500 bond. In all he was detained "a couple of hours." Plaintiff appeared *234 in the criminal court and the charge was read against him. The matter was referred to the grand jury which, on June 12, 1951, found no bill thereby dismissing the complaint.
Plaintiff thereupon commenced this action alleging that the aforesaid criminal complaint was made maliciously and falsely by the defendant and without reasonable or probable cause, and claiming damages by virtue of his arrest, imprisonment, injury to his reputation and standing, and sufferance of great pain and humiliation. It was conceded that plaintiff's damages should consist of (1) physical injuries, including pain, discomfort and loss of weight (it is to be noted that there was no necessity for plaintiff to consult a physician); mental injuries including humiliation and inconvenience, (2) loss of liberty by reason of arrest, (3) damage to reputation, and (4) any pecuniary loss as a result of the criminal charge.
The case was sent to the jury which returned a verdict of $6000 for the plaintiff; $1000 being allocated to punitive damages on the finding of malice, and $5000 designated as compensatory damages. Defendant moved for a new trial on the grounds among others, that the verdict was excessive and against the weight of the evidence. The trial judge, after hearing the argument, ordered a new trial on all issues unless the plaintiff would consent to a reduction of the compensatory damages from $5000 to $2000. The plaintiff consented, and now there is entered in his favor a judgment of $2000 compensatory damages and $1000 punitive damages.
The defendant brings this appeal and relies mainly on the contention that the action of the jury was the result of passion and prejudice, and that this factor was so glaring as to taint the entire case and not only the issue of damages, and that a new trial should be had on all issues.
We agree with the finding of the trial judge that the verdict was against the weight of the evidence in that the compensatory damages are grossly excessive.
*235 The plaintiff admitted that he sustained no pecuniary loss as a result of the criminal complaint lodged against him. He was not actually confined under the arrest, he expended no actual sums for bail, he suffered no loss of wages, he sustained no reduction in rank as a sanitary inspector though he was transferred to another district, he required no medical care and he paid no fees for legal representation. His claim for damages is based on the unfavorable publicity which he received, the time spent in going to court, submission to identification procedures and humiliation to his feelings. We feel, as did the trial judge, that compensatory damages of $5000 are totally disproportionate to the amount of damages suffered here and that such an award was the result of passion, partiality, or prejudice on the part of the jury. Further, we feel that the reduced award of $3000 is similarly excessive in view of the damages sustained. The crime charged here was a minor offense which did not involve serious implications or moral turpitude.
It is interesting to note that at the time the criminal complaint was lodged the act of malicious injury to property was not only listed in the statute books as a crime (R.S. 2:148-26), but was also included as a disorderly person offense (R.S. 2:202-9). The disorderly person statute provided that if property is maliciously injured and the damage does not exceed $25 the maximum fine which can be imposed is $25.
We feel that the award of punitive damages is also excessive. Punitive damages are not awarded upon the theory of compensation to the sufferer, but as a punishment to the offender. Hulbert v. Arnold, 83 N.J.L. 114 (Sup. Ct. 1912). However, in this case, in view of the relative minor nature of the offense charged in the criminal complaint, it seems that the jury was motivated by the same prejudice, passion or partiality in arriving at the measure of exemplary damages as influenced them in determining the amount of compensatory damages.
*236 It is evident that the trial judge found that the verdict was clearly and convincingly the result of passion, partiality, prejudice or mistake. Since he saw fit to reduce the verdict as being excessive and against the weight of the evidence, it necessarily follows that he found such mistake or bias because that is the mandate of Rule 3:59-1 (a). A verdict may only be set aside when it clearly and convincingly appears that it was the result of mistake, partiality, prejudice or passion.
Now the main question on this appeal arises, namely, whether the prejudice, passion, or partiality which we agree clearly and convincingly influenced the jury in its determination of the damages was limited solely to that issue or whether it tainted all issues and thus vitiated the entire verdict. We are of the opinion that the issue of damages is not fairly severable from the other issues, but that the emotionalism which caused the jury to err in regards to damages also influenced them in their determination of the issue of liability.
It is the settled law of this State that a new trial may be limited to damages only, where that is the only question with respect to which the verdict or judgment is wrong and it is fairly separable from the other issues, and the best interests of justice will be served by granting a partial new trial. The exercise of this power rests in the sound discretion of the court and its action with respect thereto will not be disturbed on appeal in the absence of abuse of such discretion. Gaffney v. Illingsworth, 90 N.J.L. 490, 491 (E. & A. 1917); Robinson v. Payne, 99 N.J.L. 135, 137 (E. & A. 1923); Esposito v. Lazar, 2 N.J. 257, 259 (1949). So too, it is within the discretion of the trial court in such cases to give the parties the option of paying or accepting a stated increase in or reduction of, as the case may be, the amount of the verdict, or of going on to a new trial as to the amount of damages, subject to the power of an appellate court to vacate any such terms when they appear to be an abuse of discretion. Wilson v. G.R. Wood, *237 Inc., 121 N.J.L. 41, 43 (E. & A. 1938); Gaffney v. Illingsworth, supra; Esposito v. Lazar, supra.
The Court of Errors and Appeals in Robinson v. Payne, supra, succinctly stated the applicable principle when they said (at p. 142):
"If, upon a review of the whole case, it appears that the jury has settled the question of liability fairly and upon sufficient evidence, so that, disassociated from other questions, it ought to stand; but that there has been such error in the determination of damages as requires a new trial upon that question, the court has the power to confine the new trial to the question of damages, * * *. But this is a power which ought to be exercised with caution; with due regard to the rights of both parties, and only in those cases where it is certain that the error which resulted in excessive or inadequate damages did not affect the other issues." (Italics added)
This principle was restated in Esposito v. Lazar, supra.
In Juliano v. Abeles, 114 N.J.L. 510 (Sup. Ct. 1935), the court said as follows (on p. 512):
"The new trial cannot be narrowed to the quantum of damages unless it is plain that the error committed at the trial `was limited in character as with justice to both parties to be separable from the other issues determined by the first verdict.'" (Italics added)
Thus it is apparent that when a court finds that a verdict is clearly and convincingly the result of passion, prejudice, partiality or mistake, a new trial will be limited to the issue of damages only when it is reasonably clear and certain that the error which resulted in the excessive damages did not taint all the issues in the cause. Capone v. Norton, 11 N.J. Super. 189 (App. Div. 1951), affirmed 8 N.J. 54, 63 (1951).
We find no such clarity or certainty here. Rather we find that the verdict of all damages was so excessive that there was exhibited sufficient passion, prejudice and partiality which extended to all issues in the cause.
Kress v. City of Newark, 8 N.J. 562 (1952) seems to present, in principle, an analogous situation. In that case, the plaintiff was granted a $90,000 verdict by the jury for damages due to a cancerous condition of the hand which *238 resulted from constant exposure to X-rays. Mr. Justice Ackerson found the verdict to be excessive and ordered a new trial on all issues, saying (at p. 576):
"Based upon such evidence the verdict of $90,000 is unquestionably excessive. Indeed the amount thereof, in view of the proofs, clearly and convincingly indicates that it is the result of passion, or prejudice aroused by the mysterious and dreaded connotation that the term cancer implies to the average layman, which undoubtedly led to sheer speculation by the jury."
We feel that in the case sub judice the verdict of the jury was the result of passion, prejudice or partiality possibly aroused by the impression that a public official was being martyred while in the exercise of his governmental functions.
We therefore conclude that the best interests of justice require that the verdict be set aside in toto and that a new trial be had as to all issues.
Finding, as we do, that even the reduced verdict of $3000 is excessive, there is no necessity to consider plaintiff's cross-appeal for a reinstatement of the original verdict of $6000.
Accordingly, the judgment below, as reduced, is reversed and the cause remanded for a trial de novo.