35 N.J. Super. 442 (1955)
114 A.2d 447
PETER GALLICHIO, PLAINTIFF-APPELLANT,
v.
CARMEN GUMINA AND THOMAS GUMINA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 1955.
Decided May 19, 1955.
*444 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Ernest Gress argued the cause for plaintiff-appellant (Messrs. Jack Pincus and George J. Shamy, attorneys).
Mr. Morris Spritzer argued the cause for defendants-respondents.
The opinion of the court was delivered by CONFORD, J.A.D.
On September 12, 1953 plaintiff and the defendant Thomas Gumina were driving their respective automobiles in New Brunswick and there ensued a close escape from a collision between them. There was a running altercation between the two and the utterance of profanities by plaintiff against the defendant. Later that day Thomas and his brother, the defendant Carmen Gumina, went to the plaintiff's home, encountered him on the sidewalk and a scuffle took place. There were conflicting proofs as to who was the aggressor. Plaintiff sustained a fracture of the left wrist. There was treatment by immobilization in a cast for eight weeks and thereafter an operation involving a graft of bone from the leg. The wrist continued in a cast for three months. At the trial, a year after the injury, the wrist was described medically as having a limitation of motion in both directions of about half-range but as being "a useful wrist" and "comparatively painless," except for occasional traumatic arthritis. The attending physician said the limitation in motion might improve with time. Plaintiff returned to his job after recovering and was working without reduction in earnings. He had actual damages of about $2,000 in lost earnings and medical bills.
Plaintiff brought this action for assault and battery. After submission of the evidence the trial judge in the Law Division *445 instructed the jury concerning the showing required for recovery of compensatory and punitive damages and directed that if their determination was for the plaintiff the verdict should be in a lump sum for all elements of damages awarded. The verdict was for the plaintiff in the sum of $20,000. On motion by defendant the court granted a new trial unless the plaintiff accepted a reduction of the judgment to $9,000. This amount was stated as arrived at by the allowance of $2,000 for out-of-pocket disbursements and loss of wages; $1,000 for pain and suffering; $5,000 "for permanency"; and $1,000 for punitive and exemplary damages. In a memorandum explaining his action the trial judge stated that the action of the jury "very definitely shocked the conscience of the court and indicated * * * that the size of the verdict rendered was the result of mistake on the part of the jury." Plaintiff declined to accept a reduction, and, on motion, was granted leave to appeal the award of a new trial by the Appellate Division.
Before considering the merits we notice the contention by defendants that the order under review was not appealable, within the 1953 amendatory addition to R.R. 2:2-3(b): "This court may also in its discretion permit an appeal from an order granting a new trial solely for the review of legal errors." It is urged that alleged error in granting a new trial for excessiveness of damages is not "legal error" within the intent of the rule. In view of our conclusion on the merits we express no opinion in respect to this interesting problem. The subject may be more appropriately dealt with on a motion for leave to appeal in some other matter.
Plaintiff's contentions on the merits are: (1) the verdict of the jury was not clearly and convincingly the result of mistake, and (2) a jury verdict which includes punitive damages may not be reduced.

I.
Essentially, the determination of a proper case for setting aside a jury verdict reposes in the sound judicial *446 discretion of the trial judge. Hager v. Weber, 7 N.J. 201, 212 (1951). By amendment of Rule 3:59-1 (now R.R. 4:61-1) in 1951, the Supreme Court evidenced an intent that jury verdicts should be disturbed only with great caution by directing that "the trial judge shall not set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion." Experience has proven that there cannot but be continuous difficulty and wide contrariety of result in the application of a test so loaded with subjective criteria as this. Yet the language of the rule substantially measured the court's discretion under the old practice as well. Sokol v. Liebstein, 9 N.J. 93, 97, 98 (1952). It appears, moreover, that the rule for the guidance of the trial judge in this kind of situation is, by its very nature, susceptible of only a limited sanction through the appellate process. Although, in theory, the same conception as to verdicts so far contrary to the weight of the evidence as to give rise to the "inescapable conclusion" of mistake, passion, etc., governs both appellate and trial courts, Hager v. Weber, supra (7 N.J., at p. 210), it has been most emphatically called to our attention that "a trial judge is in a better position than an appellate court to decide whether justice has been done under the particular circumstances and the weight of the credible evidence." Hartpence v. Grouleff, 15 N.J. 545, 549 (1954). In the Hartpence case the Appellate Division reversed an order granting a new trial, saying, "Manifestly and beyond all question the verdict here should not have been set aside," 28 N.J. Super. 125, 129 (1953). The court conceived that it was applying the principle of appellate superintendence where the action of the trial judge in granting a new trial appears to constitute "a manifest denial of justice." Compare the view under the former practice that the grant or refusal by the trial judge of a new trial for excessiveness of a jury verdict will not be upset on appeal unless the judicial act is such an abuse of *447 discretion "as to shock reason and justice." Nelson v. Eastern Air Lines, Inc., 128 N.J.L. 46, 58 (E. & A. 1942). But the Supreme Court on appeal in the Hartpence case, supra, reversed, laying down the rule which must govern us, viz., that the action of the trial judge "should not be disturbed unless it clearly and unequivocally appears there was a manifest denial of justice under the law." (15 N.J., at p. 549) This Division, said our highest court, is not to substitute its judgment for that of the trial judge merely because we may evaluate the evidence in a light which would justify the jury verdict. Before we may set aside the action of the trial court we must be in a position to "demonstrate how the granting of the new trial would cause a denial of justice under the evidence and law of the case." (15 N.J., at p. 549)
It will therefore be clear that in the present posture of this cause we are not to accord a presumption of correctness to the verdict of the jury, but, rather, to the action of the trial judge. In other words, we do not look to see whether our appraisal of the proofs leads us to believe the verdict was clearly the result of mistake or of any of the other factors mentioned in R.R. 4:61-1, but only inquire as to whether the trial judge's conclusion to that effect is supportable on any rational view of the case in the light of his having seen and heard the witnesses. A careful examination of the record does not lead us to the conclusion that the direction for a reduction in the instant case is insupportable, so viewed. We may entertain a different opinion in respect to his conclusion that the willful bodily assault which the jury found the defendants inflicted upon the plaintiff did not warrant more than $1,000 in punitive damages, or more than $1,000 for pain and suffering. But it is our view that our function is limited to the inquiry as to whether the reduction of the award to $9,000 in gross for all elements of damages is clearly a manifest denial of justice, whatever may be thought of the trial court's breakdown thereof among the component elements. In this regard we must consider that the function of the judge on the application was "to enter into the nature *448 of the cause, the evidence and facts, the circumstances and situations of the parties in the same manner as the jury." Salvato v. N.J. Asphalt & Paving Co., 135 N.J.L. 185, 189 (E. & A. 1947).
In determining whether the award was excessive it was thus appropriate for the court to consider the matter of provocation by plaintiff and the testimony that the defendant Thomas Gumina visited plaintiff after the fight, expressed contrition and took plaintiff to a doctor for treatment; also the comparatively moderate financial circumstances of the defendants, particularly Carmen, a college student. As to the pain and suffering and the degree of injury to the wrist, the judge had the plaintiff before him and could evaluate the medical testimony in the light of visual appraisal of the appearance and mobility of the wrist a year after the accident. We cannot conclude that, on the whole, there "clearly and unequivocally" was a manifest denial of justice.

II.
Plaintiff's contention that an award for punitive damages may not be reduced by a trial judge is not supported by the authorities, either here or elsewhere. It is the general rule that the jury may be permitted to combine in one verdict, as was done here, all items of damage growing out of the same cause of action, compensatory and punitive. 6 C.J.S., Assault and Battery, § 50, p. 894; 25 C.J.S., Damages, § 188, p. 903; see Boniewsky v. Polish Home of Lodi, 102 N.J.L. 241, 244 (Sup. Ct. 1926), affirmed 103 N.J.L. 323 (E. & A. 1927); Dreimuller v. Rogow, 93 N.J.L. 1, 3 (Sup. Ct. 1919); Dombroski v. Metropolitan Life Insurance Co., 18 N.J. Misc. 240, 243, 244 (Sup. Ct. 1940), affirmed 126 N.J.L. 545 (E. & A. 1941). The court may, however, require separate awards, Hoffman v. Trenton Times, 17 N.J. Misc. 339, 342 (Sup. Ct. 1939), affirmed 125 N.J.L. 450 (E. & A. 1940), and this is the wiser practice as it may save a new trial, at least in part, where there is error going only to one element of damage. See Lamb v. *449 Woodry, 154 Ore. 30, 58 P.2d 1257, 1265 (Sup. Ct. 1936). It might conceivably have done so here.
In Haines v. Schultz, 50 N.J.L. 481, 484 (Sup. Ct. 1888), Justice Garrison characterized the doctrine of punitive damages as "a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine." It was written over a century ago that actions "for assault and battery are in their nature vindictive, and when a jury gives exemplary damages the court has no graduated scale by which to measure them, and its general and safest rule, is not to interfere, unless they are manifestly outrageous * * *." Allen v. Craig, 13 N.J.L. 294, 301 (Sup. Ct. 1833). The implicit indication therein that an exemplary award may be reduced in an appropriate case has found occasional recognition since. See Livesey v. Helbig, 87 N.J.L. 303, 305 (E. & A. 1915); Klein v. Millside Farms, Inc., 8 N.J. 240 (1951); Wax v. Altshuler, 22 N.J. Super. 229 (App. Div. 1952). We do not read Leonard v. Hoboken Printing Co., 69 N.J.L. 238 (Sup. Ct. 1903), relied on by plaintiff, as being to the contrary. The power has not been doubted in other jurisdictions. State v. Ellison, 268 Mo. 225, 186 S.W. 1075, 1077 (Sup. Ct. 1916); Booth v. People's Finance & Thrift Co., 124 Cal. App. 131, 12 P.2d 50 (D. Ct. App. 1932); Flanary v. Wood, 32 Tex. Civ. App. 250, 73 S.W. 1072 (Tex. Civ. App. 1903); Taylor v. Williamson, 197 Ia. 88, 196 N.W. 713 (Sup. Ct. 1924). There is no reason in policy why the general power of the trial court to superintend the jury in respect to damages should not be held to extend to punitive damages, notwithstanding the common law view that the function ought to be very sparingly exercised in such cases. See Hanna v. Sweeney, 78 Conn. 492, 62 A. 785 (Sup. Ct. Err. 1906).
Affirmed.