Gope **PANJWANI**, Respondent,

v.

**STAR SERVICE & PETROLEUM COMPANY, a Corporation, and William Parker, Appellants.**

No. 51461.

Supreme Court of Missouri,

Division No. 2.

Nov. 8, 1965.

**130**

John F. Nangle, Clayton, for respondent.

J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for appellants.

Irl B. Baris, Newmark & Baris, St. Louis, Associate Counsel for Star Service & Petroleum Co., appellant.

BARRETT, Commissioner.

This is an action by a customer, Gope Panjwani, for actual and punitive damages for an assault and battery, against the assistant manager, William Parker, of a gasoline filling station and the owner-operator, Star Service and Petroleum Company. Parker in his individual capacity filed a counterclaim against Panjwani in which he claimed $500 actual and $500 punitive damages because his "feelings were wounded, he was insulted, humiliated and caused to suffer mental anguish" by reason of Panjwani's violation of a city ordinance against offensive language and disorderly

conduct. The jury found against Parker's claim, and while Panjwani sought $65,000 actual and $65,000 punitive damages, the jury returned a verdict against both defendants for $1300 actual damages and $7100 punitive damages. The parties all filed motions for a new trial, the plaintiff as to compensatory damages only, the court overruled all defendants' motions and granted plaintiff a new trial on "the sole issue of damages." Specifically the court found that the "verdict herein as to compensatory damages is inadequate and the verdict herein as to punitive damages is excessive. A new trial will be limited to the issue of damages." Upon the defendants' appeals numerous questions have been briefed and argued, but two of the problems are in fact dispositive of the appeal and it is not necessary to consider the other assignments of error. The appellants contend, in the first place, that the court erred in denying their motions for directed verdicts, and second, if plaintiff did make a submissible case, that the court erred in restricting a new trial to the single issue of damages.

■ The appellants, as manager and owner, do not challenge the general rule that for an assault and battery by an acting manager their customer may recover both actual and punitive damages; "the overwhelming weight of authority supports the proposition, either expressly or by necessary implication, that an employer may be held responsible in tort under the doctrine of respondeat superior for an assault committed by his employee while acting within the scope of the employment, even though the latter acted wantonly, and contrary to the employer's instructions." 34 A.L.R.2d 372, 396, "Liability of employer * * * for a personal assault upon customer, patron, or other invitee." The Missouri cases following and applying this general rule are all collected in that annotation and it is not necessary to list them here. The corporate appellant, Star Service & Petroleum Company, contends, however, that Parker had completed service to Panjwani and had gone on to serve another customer,

and, it says assuming that Parker did strike the plaintiff in the face with the nozzle of the pump hose, he would not have been acting in the course and scope of his employment and with the intent to promote its business and, therefore, there was no liability on its part under the rule. Parker claimed that he did not either serve or strike Panjwani, he claims that Panjwani stumbled and fell and struck his face on a concrete island.

The difficulty with both these contentions is that they do not comport with the inferences as the jury reasonably could and did draw them from the facts. Gope Panjwani is an exchange student from India attending Washington University's school of chemical engineering. The Star Service Station is at 810 North Skinker Boulevard and the plaintiff lived at 5647 Waterman and was a frequent patron of the station with his 1955 Oldsmobile automobile. On November 7, 1962, between 7:00 and 7:30 o'clock in the evening Panjwani drove into the station and stopped at a pump island near an ethyl gasoline pump. Several other automobiles were being serviced. Mr. Parker, acting manager, was there in uniform and there were two other attendants. Panjwani says that Parker came to his automobile and "I asked him, 'Will you please give me one dollar's worth of Ethyl?'" He said that Parker put the gasoline in his tank, came back to the car door and "I asked him, 'Would you please check the oil and rear tires?" But Parker refused and instead "started using abusive language * * * Using abusive language and saying, 'I ain't going to do all of that so-and-so.' When I say 'so-and-so' it means the usual bad words. 'I ain't going to do that with just one dollar's worth of gas. I ain't got no time. I got customers waiting.' * * * I was surprised. I said, 'If you don't want to give service, you don't have to abuse me.'" And Parker replied, "All right. Pay up and get the Hell out of here, I don't have time to stand here and spend service on you for one—just one dollar's worth of gas." Panjwani said that as he was taking

his money from his pocket, he looked to see if there was some other attendant that he could call on to check his tires but Parker said, "Hurry up, hurry up, pay up and get the Hell out of here." Panjwani inquired, "Who is the manager?" Parker replied, "I am the assistant manager, what are you going to do about it?" Panjwani paid Parker the dollar but he continued "to abuse me." Panjwani got out of his automobile and started walking toward the office to get someone to check the car because "the tire was low and I couldn't go home without getting the tire checked. If I get a flat, I cannot go and appear at the exam the next morning." But as he walked toward the station Parker said " 'You get the Hell out of here.' * * * He was talking while he was walking and by this time I arrived at the next pump and he told me 'Come on, come on here.' * * * It just happened so quick. I was a few feet away from him and he went toward me and all of a sudden he picked up the hose and swung it in my face and smashed it and I fell down." The next thing he remembered was waking up in the hospital with multiple, comminuted fractures of the bones in the left side of his face.

To note briefly two other independent witnesses and bits of testimony, Mrs. Coleman, who was sitting in her husband's automobile said that she saw Parker and Panjwani talking but could not plainly hear what they said, "Well, all at once, I saw this hose flying out through the air, saw Mr. Parker strike that man with it. * * * With that gas hose pump. He swung it through the air and hit him with it. * * * He hit the ground. He knocked him down with it." To Mr. Coleman, Parker said, "I don't trust them damn foreigners. They don't talk to me that way. I ain't got time to be checking tires."

█ As indicated, in these circumstances and from the permissible inferences the plaintiff made a submissible case of a vicious, unprovoked assault and battery "as plaintiff was engaged in trying to settle a

controversy concerning a portion of defendants' business, on the premises, during working hours, and with the employee to whom plaintiff had been sent to discuss the controversy by the corporate defendant's manager." Barger v. Green, Mo.App., 255 S.W.2d 127, 131; Simmons v. Kroger Grocery & Baking Co., 340 Mo. 1118, 104 S.W.2d 357. As the court observed, in a leading case, when a bridge watchman shot a *trespassing* pedestrian after he had driven him from the bridge: "The evidence tended to show that Hill was engaged in the performance of this duty when he fired the fatal shot; that the business was not done; that it was not taking care of itself, but that the defendant's servant at the time was engaged in it, and concerned about it; that he shot *dum fervet opus* ("while the work glows"); and so far as evidence discloses, was concerned about and engaged in no other business. The court committed no error in refusing the demurrer to the evidence, nor in the instruction submitting the main issue to the jury." Haehl v. Wabash Railroad Co., 119 Mo. 325, 340, 24 S.W. 737, 740. Or as another court observed in Bova v. St. Louis Public Service Co., Mo. App., 316 S.W.2d 140, 144, when a bus driver assaulted a motorist with whom the bus had collided when the motorist boarded the bus to get the names of witnesses and other information: "the question as to whether Bethel was acting in the course of his employment and within its scope in making the assault upon plaintiff was for the jury. Bethel was at the time in charge of and operating the bus. His duties were to operate the bus, collect fares, take on and discharge passengers, and maintain a schedule. By giving him such duties defendant must be held to have invested him with authority to make decisions for it, when necessary, in connection with the performance of those duties. When made, the operator's judgment becomes the judgment of defendant. By executing that judgment in an unlawful manner, the defendant is liable."

It is not necessary to detail the specific inferences and factors differentiating this case from the two instances relied on by the appellants, suffice to say that in the one "there was no evidence that Kreeger was seeking to settle any matter or claim, actually or within the apparent scope of his authority, by discouraging or driving away the claimant" (the husband of a gas patron assaulted by a meter reader). Milazzo v. Kansas City Gas Co., Mo., 180 S.W.2d 1, 5. Or in the other when a deliveryman for a hardware company assaulted a customer in a store after the two of them had engaged in a heated argument: "In the instant case the master's business was done. The fencing had been delivered. The plaintiff was seeking no recovery (redress) for the slight scratch which he received in the process of the delivery. He decided to report the driver and the driver struck him. * * * The only conclusion that can be reached upon the evidence here is that the driver for the defendant, provoked and angered by his experience in the store, gave vent to his feelings by striking the plaintiff when he came out to take the license number of the truck." Tockstein v. P. J. Hamill Transfer Co., Mo.App., 291 S.W.2d 624, 627, 628.

■ The other meritorious and determinative question concerns the trial court's action in granting plaintiff a new trial "limited to the issue of damages." There have been no Missouri cases concerned with the precise question presented by this appeal and its particular record under the statute (RSMo 1959, § 510.330, V.A.M.S.) and Civil Rule 78.01, V.A.M.R., there are only the analogies in the general rules that a new trial in a tort action may be limited to the issue of the damages recoverable provided, among other factors, "that the issue of damages be entirely separate and distinct from the issue of liability." 85 A.L.R.2d 9, 26, "Separate trial of issues of liability and damages in tort," and 29 A.L.R.2d 1199, "Propriety of limiting to issue of damages alone new trial granted on ground of in-

adequacy of damages awarded." There have been cases in other jurisdictions involving assaults and other actions in which exemplary damages were assessable in which new trials were granted and limited to the issue of damages only, even as to punitive damages only. Baker v. Carrington, 138 Va. 22, 120 S.E. 856; Brewer v. Second Baptist Church, 32 Cal.2d 791, 197 P.2d 713. But upon this record in which Parker denies that he assaulted Panjwani, and in which the viciousness of the assault would necessarily be shown upon the very issue of whether punitive damages should be assessed and if so the amount, it would appear to be impossible for the jury to adequately appraise the claim of damages, especially punitive damages, without full proof of all facts necessary to establish liability for the basic tort in the first instance. Padayao v. Severance, 116 N.J.L. 385, 184 A. 514; Wax v. Altshuler, 22 N.J.Super. 229, 230, 91 A.2d 768; Klein v. Millside Farms, Inc., 8 N.J. 240, 84 A.2d 705. When punitive damages are sought for a malicious assault it is all but inherent in the character of the action that "the evidence relating to wilful misconduct is so inextricably tied up with that relating to primary negligence that a fair trial upon either issue requires a trial of both issues together." Atlantic Coast Line R. Co. v. Bennett, 4 Cir., 251 F.2d 934, 939. It is of the essence of the rule permitting a new trial as to damages only that "the propriety of such limitation in a particular instance is generally regarded as resting in the discretion of the court ordering the new trial" (85 A.L.R.2d l. c. 41), and this is not to anticipate or to attempt to set forth a hard and fast rule for all future cases. It is to say with deference, however, that upon this particular record the issues of tortious misconduct and consequent liability in the first instance and punitive damages are not entirely separate and distinct but are so interwoven that it was an abuse of discretion to not award a new trial on all issues. Accordingly the judgment awarding plaintiff a new trial is affirmed but insofar as it limits the new trial to damages only the cause is reversed and remanded for a new trial on all issues.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.