Walter W. CHAPMAN and Kay Chapman, Plaintiffs-Respondents,

v.

Bernard DURASKI,
Defendant-Appellant.

No. 50651.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 12, 1986.

Motion for Rehearing and/or Transfer
Denied Dec. 10, 1986.

Application to Transfer Denied
Jan. 13, 1987.

E. Thomas Liese, St. Louis, for defendant-appellant.

Margaret Gangle-Casinger, St. Louis, for plaintiffs-respondents.

SNYDER, Chief Judge.

This is a civil case which was brought by the plaintiffs-respondents in three counts, count one for battery seeking actual and punitive damages, count two for malicious prosecution seeking actual and punitive damages, and count three for loss of consortium seeking actual damages only. The case was tried to a jury and the verdicts and judgments were for respondents on all counts.

The defendant appeals, asserting that respondents failed to prove malice to support an award of either actual or punitive damages on the malicious prosecution count. Appellant also contends that malice was not proved on the battery count and that, because of the failure to prove malice which would support an award of punitive damages on either the battery or the malicious prosecution count, the verdicts for actual damages were so infected by the error that a new trial should be awarded on all the issues.

The litigation arises out of an incident which occurred on September 5, 1980, on Highway 94 in St. Charles County. Respondents are Walter Chapman, who was an assistant volunteer fire chief at the time of the occurrence, and his spouse Kay Chapman. Appellant was a St. Charles County deputy sheriff at the time of the incident. Respondent Walter Chapman and his son were driving south on Highway 94 and the appellant was driving north on Highway 94 when both received radio calls at or near the same time about an automobile fire at a location to the south on Highway 94.

Respondent and his son saw appellant pass them driving north on Highway 94 with three flashing lights on the grill of his unmarked car. Respondent activated his siren and lights when he received the call about the fire. He was driving southbound in the inner or passing lane of the highway at the time.

In the meanwhile, appellant had crossed the median in a u-turn and was proceeding south on Highway 94 behind respondent's automobile with his siren sounding and lights flashing. Respondent continued in the inner lane, because, according to his testimony, there was traffic to his right and he could not change lanes. Appellant passed respondent on the inner shoulder and median and in his testimony said that the respondent could have changed lanes to allow appellant's vehicle to pass using the inner lane instead of the shoulder and median. Appellant said there was no traffic to respondent's right and that "he had a clear lane to go".

Respondent then drove with his son to a firehouse, where they left their car, entered a fire truck and drove to the location of the fire. Respondent was in charge of the fire-fighting. There was conflicting testimony about the status of the fire when respondent arrived. The appellant said that he and another police officer had arrived and had started to put out the fire with the fire extinguishers they carried in their police vehicles. Respondent said the fire was still burning when he arrived and that his attention was given entirely to the fighting of the fire until the fire was put out, about six to eight minutes. Respondent saw a police officer directing traffic at

the time of the fire, but did not notice any other police officers.

The first time that respondent Walter Chapman noticed appellant was when someone tapped him on the shoulder. Respondent turned around, asked appellant why he tapped him on the shoulder, and appellant, who was wearing a uniform, said he wanted respondent's operator's license.

Respondent asked appellant why he wanted the license and was given no reason. Later appellant said that the reason was that someone in respondent's car had "flipped him off" as appellant drove past respondent on the highway.

Appellant asked respondent for his license three times. Respondent could not remember whether appellant told him he would be arrested if he did not produce the license.

Another officer hit respondent and he was bent over the car which had been on fire and handcuffed by the two officers. The handcuffs were fixed to respondent's wrists so that any movement he made resulted in the handcuff tightening itself on his left arm. He repeatedly asked appellant to remove the handcuffs, but appellant refused to do so. He asked appellant to loosen the handcuffs because the circulation was cut off, causing him pain, but again, appellant refused to do so.

Respondent Walter Chapman is left handed. He is an engraver. He testified that his left hand was still hurt at the time of the trial; that he was unable to perform the fine engraving that he had done in the past; and that he had lost business customers because of his injury.

Respondent was taken in appellant's motor vehicle to the St. Charles County sheriff's office where he was placed in the custody of an investigator. Then respondent was taken to court after which he was taken to a holdover room in the jail. The handcuffs were then removed and he was released on bond. The entire process took about four hours.

On the way to the sheriff's office, respondent told appellant that if he would remove the handcuffs, he would forget the entire incident. Appellant said in his testimony that during all of the occurrences, at the place of the fire, the ride to the sheriff's office, and in the courtroom, respondent was loud and belligerent and threatened that he would get appellant's job.

Respondent was charged with misdemeanor violations. There was some testimony about resisting arrest, but the exact nature of the offenses, and in fact the exact number are not clear from the record, although appellant in his brief says that three misdemeanor tickets were issued.

A trial was held and respondent was acquitted of all charges. He then brought suit against appellant in three counts, count one for battery in which he prayed for actual and punitive damages, count two for malicious prosecution in which he prayed for actual and punitive damages, and count three in which Mrs. Chapman prayed for actual damages for loss of consortium.

The jury returned verdicts on all three counts in favor of respondents, awarding actual damages of $5,000.00 and punitive damages of $2,500.00 on the battery count, actual damages of $25,000.00 and punitive damages of $5,000.00 on the malicious prosecution count and actual damages of $500.00 on the loss of consortium count.

In appellant's first point on appeal, he alleges the trial court erred in denying his motion for a judgment notwithstanding the verdict because respondent Walter Chapman failed to produce sufficient evidence to prove the malice needed to support a claim for malicious prosecution. The point is denied.

■ To succeed in an action for malicious prosecution, a plaintiff must plead and prove six elements: 1) the commencement of a prosecution against the plaintiff; 2) the instigation by the defendant; 3) the termination of the proceeding in favor of the plaintiff; 4) the want of probable cause for the prosecution; 5) the defendant's conduct was actuated by malice; and 6) the

plaintiff was damaged. *Sanders v. Daniel Intern Corp.*, 682 S.W.2d 803, 807[1] (Mo. banc 1984).

Appellant questions whether the respondent proved that appellant's conduct was actuated by malice. The court gave instruction number 12 to the jury, a modified version of MAI 23.07:

Your verdict must be for plaintiff if you believe:

First, defendant instigated a judicial proceeding against plaintiff which terminated in favor of plaintiff, and

Second, in so doing defendant acted primarily for a purpose other than that of bringing an offender to justice and acted without reasonable grounds, and

Third, plaintiff was thereby damaged.

This instruction is the one which the Supreme Court in *Sanders* at page 814[8] f.n. 4, directs should be used in malicious prosecution actions.

The question then, is whether the respondent made a submissible case under this instruction. A motion for a judgment notwithstanding the verdict raises the same issues as a motion for a directed verdict—whether plaintiff made a submissible case. *Wells v. Orthwein*, 670 S.W.2d 529, 532[1, 2] (Mo.App.1984). Sustaining a motion for a directed verdict is only proper if all the evidence and reasonable inferences from the evidence are so strongly against the plaintiff that reasonable minds cannot differ. *Delisi v. St. Luke's Episcopal-Presbyterian Hospital, Inc.*, 701 S.W.2d 170, 173[1–5] (Mo.App.1985). The evidence and all inferences must be considered in the light most favorable to the submission of the case to the jury. *Goddard v. St. Joseph Light and Power Company*, 379 S.W.2d 565 (Mo.1964); *Tahan v. Garrick, Inc.*, 701 S.W.2d 189, 190[1] (Mo.App.1985). Respondent made a submissible case on the malicious prosecution count.

Appellant challenges the proof of malice. There was evidence that a purpose other than that of bringing the offender to justice was before the jury. The members of the jury could well have inferred that the reason appellant accosted respondent and asked for his driver's license was because he was angry at being "flipped off". Appellant refused to give respondent any explanation concerning appellant's demand for the driver's license, even after respondent was turned around and slammed violently against an automobile.

■ The jury could also have inferred that appellant took the action which he finally did because he felt his authority had been affronted. Although a view of the evidence as given by appellant at the trial might dictate a different result, when the evidence is considered in the light most favorable to submissibility, there was no abuse of discretion on the part of the trial court when it submitted the case to the jury and denied appellant's motions for a directed verdict and judgment notwithstanding the verdict.

■ The instruction also told the jury that to find for respondent they must find that appellant acted without reasonable grounds. This, too, was a fact question for the jury to decide.

Two emergency vehicles were traveling in the same direction. Although appellant argues that respondent could have pulled over to the right, there was evidence that the right-hand lane was carrying traffic which would have prevented this maneuver. If the jury believed that respondent could not have moved his vehicle to the right as they were entitled to do, it was unreasonable for appellant, as an ordinarily cautious and prudent person, to believe that respondent was guilty of any traffic offense. Point one is denied.

In appellant's second point, he contends the trial court erred in denying his motion for a judgment notwithstanding the verdict on the punitive damages in the malicious prosecution count because respondent failed to make a submissible case on the degree of malice required for a punitive damage instruction in a malicious prosecution action. This point also is denied.

In *Sanders v. Daniel Intern. Corp.*, 682 S.W.2d at 815[10, 11], the Supreme Court

prescribes an instruction on actual malice. That instruction, number 15, was given by the trial court and it read:

If you find the issue in favor of plaintiff, Walter Chapman, and if you believe the conduct of defendant, Bernard Duraski, as submitted in Instruction No. 12 was maliciously done, then in addition to any damages to which you may find plaintiff, Walter Chapman, entitled under Instruction No. 14, you may award plaintiff, Walter Chapman, an additional amount as punitive damages in such sum as you believe will serve to punish defendant, Bernard Duraski and to deter him and others from like conduct.

An act or a failure to act is "maliciously" done, if prompted or accompanied by ill will, or spite or grudge, either toward the injured person individually, or toward all person in one or more groups or categories of which the injured person is a member.

Appellant argues that there was no indication that he bore respondent any ill will, spite or grudge before September 5, 1980, the date when the arrest occurred. The jury however could have found that his conduct on that day was accompanied by ill will toward respondent. He asked respondent to display his driver's license at the scene of a fire where respondent was in charge of the firefighting activities, and at a time removed from the time of the occurrence out of which the arrest arose. Again, the jury could have found that appellant's actions were taken because he was angry and bore ill will toward respondent for having been "flipped off", and because respondent failed to change lanes, even though traffic in the other lane prevented him from doing so.

■ Appellant slammed respondent against the car. He placed handcuffs on him causing injury to respondent. Appellant refused to loosen the handcuffs even though he was requested to do so and even though the appellant told him that the cuffs were too tight and were cutting off his circulation, a refusal which indicated appellant's ill will toward respondent. Tak-

en in the light most favorable to the submissibility, there was at least minimally sufficient evidence of actual malice to submit the punitive damages instruction to the jury. Point two is denied.

Appellant in his third point contends that he should be granted a new trial on all claims because there was insufficient evidence to support claims for punitive damages for malicious prosecution. This contention has been ruled against the appellant and thus it is unnecessary to discuss his third point.

■ In point four it is claimed the trial court erred in submitting two different definitions of malice in the two punitive damages instructions: one for the battery count and the other for the malicious prosecution count. The point is denied.

MAI 10.01 and 16.01 were proper submissions of punitive damages in the battery case. The definition of malice in these instructions is the old definition which does not require spite or ill will, but requires only the intentional doing of a wrongful act without just cause or excuse.

The instruction on punitive damages for the malicious prosecution case requires a higher degree of malice and that higher degree of malice was found by the jury under the instruction approved in *Sanders v. Intern Corp.*, 682 S.W.2d at 815(10, 11).

The jury was not mislead or confused by the two definitions. The instructions were packaged and it was clear from them that the different definitions applied. The instructions given were approved in the *Sanders* case and Missouri Approved Jury Instructions, and respondent had no choice but to use them.

In any event, the issue of whether jury instructions are confusing is first addressed in the trial court's discretion. *Affiliated Foods Inc. v. Strautman*, 656 S.W.2d 753, 758[1–3] (Mo.App.1983). The trial court's decision will not be reversed unless it can be shown that the trial court abused that discretion. In determining whether such an abuse of discretion has occurred, the reviewing court is permitted

"to believe that the jury was composed of reasonably intelligent people who possess common sense and an average understanding of the English language". *Id.* at 758–59. The burden of proof lies with the party challenging the instruction. *Powell v. Norman Lines, Inc.,* 674 S.W.2d 191, 194[1–3] (Mo.App.1984). Appellant has failed to prove that the packaged instructions confused or mislead the jury. Point four is denied.

■ Appellant's last point is well taken. The trial court should have granted appellant's motion for a judgment notwithstanding the verdict because a submissible case was not made for respondent Kay Chapman's loss of consortium claim. The entire testimony by Mrs. Chapman on this point was:

> Question: How about you, were you upset and agitated?

> Answer: I was crying, and, yes, I was upset because I didn't know really what was going on and my parents were coming to visit and all this commotion was going on over I really didn't know what.

> \* \* \* \* \* \*

> Question: All right. What affect did this behavior change have on you?

> Answer: Well, then I got uptight because I knew he was getting uptight about the business and his arm.

This evidence falls short of the amount required for the submission of a loss of consortium claim to the jury and the trial court erred when it failed to render a judgment notwithstanding the verdict on this count. On review of a jury verdict, this court does not determine the credibility of the witnesses, resolve conflicts in testimony or weigh the evidence. When there is a "complete absence of probative facts to support the conclusion reached by the jury", however, a jury verdict will be overturned. *Maxam v. Dillon,* 674 S.W.2d 258, 260[5, 6] (Mo.App.1984). Such an absence of facts is found on Mrs. Chapman's claim for loss of consortium. That portion of the judgment must be reversed.

The judgment in favor of Kay Chapman for loss of consortium is reversed. In all other respects the judgment is affirmed.

CRANDALL and PUDLOWSKI, JJ., concur.