Karl E. BURNETT,
Respondent–Appellant,

v.

Roger GRIFFITH, et al.,
Appellants–Respondents.

No. 69147.

Supreme Court of Missouri,
En Banc.

May 16, 1989.

Ronald M. Sokol, St. Joseph, for respondent-appellant.

George A. Barton, Kansas City, Robert Randolph, St. Joseph, for appellants-respondents.

ROBERTSON, Judge.

This consolidated appeal arises out of a suit for assault and battery, false imprisonment and malicious prosecution. The plaintiff, Karl Burnett, sued Roger Griffith, a security guard, and Griffith's employers, East Hills Merchants' Association and Belt Highway Investment Company. The jury returned a verdict against all defendants on the assault and battery count, awarding Burnett $1,500 in actual damages. The jury found in favor of the guard, Griffith, but against his employers East Hills Merchants Association (East Hills) and Belt Highway Investment Company (Belt Highway) on the false imprisonment and malicious prosecution counts, awarding the plaintiff $5,000 and $20,000, respectively, in actual damages. The trial court refused to instruct the jury on Burnett's claims for punitive damages. All parties appealed.

Prior to opinion, the Court of Appeals, Western District, transferred the case to this Court to determine whether the rule announced in *Douglass v. Safire*, 712 S.W. 2d 373 (Mo. banc 1986), applied to the inconsistent verdicts reached by the jury in this case. The jury received instructions on the false imprisonment claim based on a theory of respondeat superior. The jury exonerated Griffith, the employee, but assessed liability against East Hills, the employer. This Court held that *Douglass* required a party to object to inconsistent verdicts before the jury is discharged or waive the error. Having failed to do so, under the holding in *Douglass*, Burnett waived his right to complain of the error. *Burnett v. Griffith*, 739 S.W.2d 712, 715 (Mo. banc 1987). As a result, East Hills was entitled to a verdict as a matter of law on the false imprisonment claim.

We did not reach the remaining issues presented on appeal by the parties and retransferred the case to the Court of Appeals, Western District, for resolution. The court of appeals heard the appeals en banc. The majority opinion held that East Hills was entitled to judgment on the charge of malicious prosecution because there was no evidence that East Hills encouraged, instigated or advanced the prosecution of Burnett. However, the Court of Appeals affirmed the jury's verdict and award of actual damages on the assault and battery count. The majority relied on this Court's decision in *Sanders v. Daniel International Corp.*, 682 S.W.2d 803 (Mo. banc 1984), and held the evidence insufficient to submit the issue of punitive damages to the jury. Three judges dissented on the issue of the submissibility of the punitive damages, arguing that the majority misinterpreted the level of malice necessary to submit a claim for punitive damages. Based on their belief that MAI 16.01 provided the proper standard for a submission of punitive damages, the dissenters certified the case to this Court, citing a conflict between the majority opinion and *Fordyce v. Montgomery*, 424 S.W.2d 746 (Mo.App.1968), and *Chapman v. Duraski*, 721 S.W.2d 184 (Mo.App.1986). We have jurisdiction. Mo. Const. art. V, § 10.

The issue before us is whether MAI 16.-01 correctly states the law with regard to the submission of punitive damages in an intentional tort case. We hold it does not. The judgment of the trial court is, therefore, affirmed in part, reversed in part, and remanded with directions.

I.

Belt Highway Investment owns the East Hills Shopping Center in St. Joseph, Missouri. The tenants of the shopping center, including The Ground Round, a restaurant, were members of the East Hills Merchants' Association.

On July 9, 1983, Burnett and three other men were standing outside of the Ground Round in the East Hills parking lot near Burnett's automobile. Burnett had just left the restaurant. Griffith, a St. Joseph police officer moonlighting as a security guard for East Hills, arrived on his motorcycle and parked behind Burnett's car. At this point, accounts of events diverge according to the interests of the witnesses. Taken in the light most favorable to Bur-

nett, the evidence was that Griffith approached Burnett and, without making any inquiry as to what the group's purpose was in being at the shopping center and without identifying himself as a shopping center employee, ordered Burnett and the others to leave. Burnett told Griffith he would comply if Griffith would move his motorcycle. Instead, Griffith demanded identification. Burnett, already holding car keys, displayed a billfold containing his driver's license. Griffith slapped both from Burnett's hand; the keys and billfold fell to the pavement. Griffith ordered Burnett to lean against the car for purposes of a search. In "assisting" Burnett in assuming the search position, Griffith kicked at Burnett's feet causing Burnett to lose his balance and strike his face against the car. Griffith manacled Burnett's hands and used a long flashlight inserted between Burnett's arms and back to twist and pry his arms upward. Following the search, Griffith placed Burnett under arrest and, with the assistance of another police officer who was called to the scene, escorted Burnett to the St. Joseph police station. Griffith charged Burnett with disorderly conduct and willful misuse of premises,[1] both municipal ordinance violations. Burnett was released after posting bond.

The following day, Burnett went to the manager of the Ground Round and protested Griffith's conduct. The manager expressed his concern and accompanied Burnett to the office of Betty Hartman, the on-site manager of the shopping center, with the intention of resolving the complaint. Hartman, however, was unsympathetic and told Burnett that shopping center merchants had experienced problems with people drinking in the parking lot and announced she felt it was time to make an example. Prior to the incident involving Burnett, East Hills had written to St. Joseph authorities asking that the willful mis-

use ordinance be enforced at East Hills to promote security in the parking areas.

Burnett was tried in the St. Joseph municipal court on the ordinance violations. That court acquitted Burnett of all charges.

## II.

On appeal, East Hills contends that the trial court erred in failing to sustain its motion for judgment notwithstanding the verdict on the malicious prosecution count. East Hills argues there was no evidence that East Hills, apart from the conduct of Griffith, instigated the prosecution of Burnett for violation of the city ordinances. On this count the jury returned verdicts exonerating Griffith, as employee, but holding against East Hills the employer. The malicious prosecution claim, however, was not based solely on the theory of respondeat superior.

In this Court's prior opinion in this case, we suggested that a jury could render a verdict against East Hills, despite a verdict in favor of Griffith, if the evidence showed conduct by other officers, agents or employees of East Hills sufficient to prove the elements of malicious prosecution. *Burnett*, 739 S.W.2d at 716. However, East Hills' liability may not rest on Griffith's acts.

In reviewing a trial court's denial of a motion notwithstanding the verdict, we examine the evidence in the light most favorable to the party against whom the judgment is sought. *McGuire v. Wilcher*, 689 S.W.2d 719, 721 (Mo.App.1985). Our review is conducted against the requirement that proof of the essential elements of malicious prosecution be strict and clear. *Zahorsky v. Griffin, Dysart, Taylor, Penner and Lay, P.C.*, 690 S.W.2d 144, 151 (Mo.App.1985).

The elements of a cause of action for malicious prosecution include, among

---

1. The offense of misuse of premises is apparently defined by St. Joseph ordinance Section 16–147, which makes it unlawful for persons to congregate, linger or loiter at drive-in restaurants or shopping center parking lots in groups of three or more and to refuse to leave when

requested. The record suggests that the ordinance only applies to private premises and is enforced only upon request of the owners of the premises. The validity of the ordinance is not at issue here.

the six ingredients,[2] proof that the defendant instigated the prosecution. *Sanders,* 682 S.W.2d at 807. Instigation requires proof that the defendant stimulated, promoted or encouraged the specific action taken. *Linkogel v. Baker Protective Services, Inc.,* 626 S.W.2d 380, 384 (Mo.App. 1981). Mere passive knowledge of or acquiescence in the acts of another is not sufficient. *Palermo v. Cottom,* 525 S.W. 2d 758, 764 (Mo.App.1975).

■ In this case no evidence shows that anyone associated with East Hills, except Griffith, instigated Burnett's arrest or prosecution. Griffith alone confronted Burnett in the parking lot, took him to the police station and prepared the charges. No evidence exists that Griffith consulted with or received any directions from anyone at East Hills about Burnett's arrest; to the contrary, the evidence shows that no one from East Hills went so far as to investigate the matter following Burnett's arrest. Betty Hartman's acknowledgment of the general request for enforcement of the city ordinance and her lack of sympathy for Burnett's difficulties, when he complained of Griffith's conduct, show a willingness on the part of East Hills to accept Griffith's judgment as a police officer (though acting as East Hills' employee in this case) as to the conformance of Burnett's conduct to the city ordinances. We do not believe the mere request by a commercial citizen to the police department that ordinances be enforced—a request made well in advance of the arrest in this case, without any knowledge of Burnett's activities and without any specific direction to effect Burnett's arrest or prosecution—is a sufficient predicate for liability for either East Hills or Belt Highway.

Once consideration of Griffith's conduct is eliminated, the case is barren of any proof that East Hills instigated the prosecution of Burnett. The failure of proof of this element of the tort ends the inquiry. The trial court erred in failing to direct a verdict for East Hills and Belt Highway Investment on the malicious prosecution count.

## III.

■ East Hills next contends the trial court erred in failing to enter judgment notwithstanding the verdict on the assault and battery count. East Hills bases its argument on plaintiff's supposed failure to prove East Hills' right to control Griffith's conduct. East Hills argues that Griffith acted as a St. Joseph police officer when he arrested Burnett; if any assault occurred, it was in the course of lawful arrest. *See Carmelo v. Miller,* 569 S.W.2d 365 (Mo. App.1978) (if an employee occupies the dual status of a security guard and a police officer, the employer cannot be held accountable for action taken by the police officer in his official capacity).

In *Carmelo,* the St. Louis Cardinals Baseball Club employed off-duty members of the St. Louis police department to act as security guards for Cardinal games. While the officers were providing security at the stadium, an usher reported a man displaying a gun at a concession stand. A description of two men, apparently involved, was given. Investigation at the stand disclosed no one matching the descriptions. After the game ended, the officers encountered Carmelo and another person in the stadium parking lot and detained them because they appeared to match the persons described earlier. Carmelo was arrested, but later released. Carmelo sued. The trial court directed a verdict for the Cardinals. On appeal, Carmelo argued that the baseball club was not immune from liability for the acts of the officers merely because they had the dual status of guards and policemen.

*Carmelo* includes the general proposition of law upon which East Hills relies. The opinion also points out that the immunity of the baseball club depends on the fact

---

2. A person suing on a theory of malicious prosecution must plead and prove six elements: (1) the commencement of a prosecution against the plaintiff; (2) instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged. *Sanders,* 682 S.W.2d at 807.

that the usher did no more than report to the officers a description of a man displaying a gun at a concession stand. There was no attempt by the private employer to direct the subsequent conduct of the officers. It was left entirely to the officers to decide what should be done.

However, *Carmelo* cites 53 Am.Jur.2d *Master and Servant* § 416 (1970), which discusses distinctions in assessment of liability for the acts of the servant-police officer depending on the facts of the case. Where the capacity in which the officer acts is uncertain and dependent on the resolution of conflicting testimony, the question whether he was acting in the course of his employment for the private employer is for the jury.

In the present case, the evidence shows that East Hills requested enforcement of the St. Joseph ordinance to keep persons from gathering in the parking lot. The record reveals that only property owners could invoke the ordinance by requesting its enforcement. Thus, the private interests of the shopping center owners and merchants, rather than a public concern to maintain law and order, motivated the actions of the security force.

Griffith was expected to use the city ordinance in the discharge of his function as a security guard for East Hills property and not as a police officer dealing with crime. When he confronted Burnett and the others, Griffith acted in a private capacity to keep the parking lot clear for use by merchants and their customers. At a minimum, the issue of whether Griffith was acting as the agent and employee of East Hills at the time of Burnett's arrest was a fact question for the jury. The jury resolved the issue in Burnett's favor. The trial court did not err in denying East Hills' motion for judgment notwithstanding the verdict on the assault and battery count.

Alternatively, East Hills contends the judgment against it for assault and battery should be reversed because the evidence showed Griffith used only the force reasonably necessary to accomplish Burnett's arrest. Griffith makes a similar argument. East Hills claims the trial court should have granted its motion for judgment notwithstanding the verdict. Griffith urges that his motion for directed verdict at the close of the evidence should have been sustained.

■■■ As to Griffith's appeal, we decline to consider any claim of error. Griffith filed no motion for new trial as required by Rule 78.07; therefore, the claim that plaintiff did not make a submissible case is not preserved for appellate review. Belatedly, in a reply brief, Griffith seeks plain error review under Rule 84.13(c) contending that he would suffer manifest injustice were he denied the right of review. Apart from the fact that he has not demonstrated the kind of manifest injustice contemplated by Rule 84.13(c), plain error is not a doctrine available to revive issues already abandoned by selection of trial strategy or by oversight. *Burtrum v. U-Haul Company of Southern Missouri,* 658 S.W.2d 70, 73 (Mo.App. 1983) (*quoting Sherpy v. Bilyeu,* 608 S.W.2d 521, 523 (Mo.App.1980)). Griffith's appeal is denied.

East Hills' alternative contention rests on the assumption that Griffith was acting as a St. Joseph police officer and not as East Hills' security guard when he arrested Burnett. Griffith reasonably believed Burnett violated a law or ordinance, their argument goes, and thus probable cause existed to justify a warrantless arrest. Ergo, the argument concludes, Griffith could use whatever force was necessary to accomplish the arrest without risking liability. *See* Sections 544.180, 544.190, RSMo 1978, and 544.216, RSMo Cum.Supp.1984,[3] and *City of Sedalia v. Russell,* 623 S.W.2d 609 (Mo.App.1981).

The defect in East Hills' argument lies in its assumption that Griffith acted as a police officer and not as East Hills' employee in effecting the arrest. As already stated, the question whether Griffith acted as a police officer or a security guard under

---

**3.** Section 544.216, RSMo Cum. Supp.1984, was not in effect at the time of the events here. Its test is, in any event, not applicable to the argument made by East Hills or the circumstances of this case.

these circumstances was a fact question left for the jury's determination. The jury resolved that question in Burnett's favor.

The jury's factual determination rejects the primary premise of East Hills' argument. The conclusion urged by East Hills does not follow if the primary premise is incorrect. The point is denied.

## IV.

### A.

Burnett presents a single issue on appeal. He contends the trial court erred in refusing to submit his claims for punitive damages on each of his three counts. He asserts that the evidence of malice was sufficient to submit to the jury a punitive damages instruction on each count. Because we find Burnett was not entitled to a verdict on either his malicious prosecution or false imprisonment counts, his argument for a punitive damages submission on those counts fails. We are left to consider the punitive damages argument on the assault and battery count only. We address the issue of malice fully aware that the meaning of *Sanders v. Daniel International Corp.*, 682 S.W.2d 803 (Mo. banc 1984), has not been fully explicated by this Court and, to use the words of the dissenting opinion from the court of appeals in this case, has resulted in "decisional disarray."

### 1.

*Sanders* was a suit for malicious prosecution arising out of a criminal complaint. This Court identified and defined three degrees of malice: (1) malice in law, which is defined as "a wrongful act done intentionally without just cause or excuse"; (2) legal malice, which means bad faith conduct, *malo animo*, general wickedness, a depraved inclination to do harm; and (3) malice in fact or actual malice, which requires a showing of ill will, spite, personal hatred, vindictive motives, an attempt to vex, injure or annoy another. *Id.* at 807–8.

Legal malice is an essential element of the underlying tort of malicious prosecution. *Sanders* held that an award of punitive damages in a malicious prosecution case requires proof of a higher degree of malice than that necessary to prove the underlying tort, where malice is an element of the underlying tort. Because MAI 16.01 did not require a higher degree of culpability than the legal malice necessary to establish liability in a malicious prosecution case, this Court found error in a submission of punitive damages under MAI 16.01. Punitive damages in a malicious prosecution case thus required proof of actual malice.

Much of the argument in this case has centered on the pronouncement in *Sanders*, that "[a] higher degree of malice should be required to award punitive damages than to find liability." *Sanders*, 682 S.W.2d at 814. The relevant issue is whether MAI 16.01 correctly states the law with regard to the submission of punitive damages in an intentional tort case. *Sanders* placed the continuing viability of MAI 16.01 in doubt when the Court said: "The instruction does not require the jury to find that the defendant acted with an improper purpose. Indeed, this is nothing more than the common generic definition of an intentional tort...." *Sanders*, 682 S.W.2d at 811.

*Sanders* draws lines within the law of malice; in this case, we are asked to place those lines within the law of punitive damages. We are admonished that "[s]ometimes, when trying to make things more clear the courts will accomplish the exact opposite." Comment, "The Evil that Men Do: Malice and Punitive Damages," 51 Mo. L.Rev. 751 (1986) (hereafter "Comment"). That this is so is apparent in the disparate application of *Sanders* to the issue of punitive damages by Missouri appellate courts. In the wake of *Sanders*, several cases reject malice in law as the basis for punitive damages. *See, e.g., Overman v. Southwestern Bell Co.*, 706 S.W.2d 244, 248 (Mo. App.1986) (*malo animo* required to prove punitive damages); *Collet v. American National Stores, Inc.*, 708 S.W.2d 273, 287

(Mo.App.1986) (punitive damages must be supported by legal malice); *Gaffney v. Community Federal Savings and Loan Assn.,* 706 S.W.2d 530, 535 (Mo.App.1986) ("defendant ... must have known [his act] was wrongful when he did it."); *Moon v. Tower Grove Bank & Trust Co.,* 691 S.W. 2d 399, 401 (Mo.App.1985) (in wrongful garnishment action plaintiff must show "intentional doing of wrongful act without just cause or excuse in reckless disregard of the rights of others.").

Conversely, several cases hold that MAI 16.01 is the appropriate punitive damage instruction in cases not involving malicious prosecution. *See, e.g., Rogers v. Hickerson,* 716 S.W.2d 439, 447 (Mo.App.1986) ("there need not be any showing that the act was done willfully or wantonly, or with spite or ill will."); *accord, McDonald v. Ozark Machinery Co.,* 720 S.W.2d 42, 43 (Mo.App.1986); *Delong v. Osage Valley Electric Cooperative Ass'n.,* 716 S.W.2d 320, 326 (Mo.App.1986); *Honingman v. Hunter Group, Inc.,* 733 S.W.2d 799, 809 (Mo.App.1987).

2.

Any discussion of malice takes on meaning only to the extent that we understand its purpose—to determine the quantum and nature of the evidence necessary to support an award of punitive damages. It is first necessary, therefore, to consider the nature of punitive damages.

In *Klingman v. Holmes,* 54 Mo. 304 (1873), this Court first allowed an award of punitive damages in Missouri. In an earlier case, the Court wrote that punitive damages "may serve for an example to others in like cases, and may so far be called exemplary." *McKeon v. Citizens' Railway Co.,* 42 Mo. 79, 87 (1867). Later, this Court described punitive damages as a "fine which society imposes on the offender to protect its peculiar interests." *Lampert v. Judge & Dolph Drug Co.,* 141 S.W. 1095, 1097 (Mo.1911). Still later, the Court rea-

soned that "[p]unitive damages are awarded for the purpose of inflicting punishment for wrongdoing, and as an example and deterrent to similar conduct." *Beggs v. Universal C.I.T. Credit Corp.,* 409 S.W.2d 719, 722 (Mo.1966). The Restatement (Second) of Torts § 908 (1977), provides:

(1) Punitive damages are damages ... awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct.

Justified as punishment and intended to make an example of a defendant on account of his outrageous conduct, punitive damages require a showing of a culpable mental state on the part of the defendant, either by a wanton, willful or outrageous act or reckless disregard [4] (from which evil motive is inferred) for an act's consequences. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." Restatement (Second) of Torts, § 908(2) (1979). It is not so much the commission of the intentional tort as the conduct or motives—the defendant's state of mind—which prompted its commission that form the basis for a punitive damage award. W. Prosser & W. Keeton, Prosser and Keeton on Torts Chap. 1, § 2, 9 (1984) (hereafter Prosser & Keeton). Plaintiff must prove that defendant's evil hand was guided by an evil mind. *Rawlings v. Apodaca,* 726 P.2d 565, 578 (Ariz. banc 1986). It is the absence of a requirement of a culpable mental state that led *Sanders* to condemn the language of MAI 16.01.

3.

That punitive damages are appropriate in some cases of assault and battery is beyond cavil. "Like battery, assault frequently arises out of the worst intentions, and in such cases is an appropriate tort for punitive damages, which are not allowed, however, where it is committed because of

4. *See* MAI 10.02.

innocent mistake." Prosser & Keeton, Chap. 2, §§ 2, 10, 43.

We are thus left to determine the standards which permit a submission of punitive damages to the jury in an assault and battery case. MAI 16.01 instructs the jury that malice "does not mean hatred, spite or ill will, as commonly understood, but means the doing of a wrongful act intentionally without just cause or excuse." Yet as *Sanders* so clearly shows, malice can, and should, have other meanings in other contexts.

Our task is made more difficult by the ambiguity of the phrase "the doing of a wrongful act intentionally without just cause or excuse". For the dissenting opinion of the court of appeals in this case, the phrase holds a clear and certain meaning; *Fordyce v. Montgomery*, 424 S.W.2d 746 (Mo.App.1968), and *Chapman v. Duraski*, 721 S.W.2d 184 (Mo.App.1986), also assume the same meaning for the phrase and thus provide a suitable standard for the imposition of punitive damages in the minds of the dissenters.

*Fordyce* involved an assault; the jury awarded plaintiff both compensatory and punitive damages, the latter based on a showing that the assailant committed a wrongful act intentionally without just cause or excuse. *Fordyce* refers to *Beggs v. Universal C.I.T. Credit Corp.*, 409 S.W. 2d 719 (Mo.1966). But *Beggs* goes farther than MAI 16.01. "There must be, in order to justify punitive damages, some element of wantonness or *bad motive*, but if one intentionally does a wrongful act and knows at the time that it is wrongful he does it wantonly and *with a bad motive.*" (Emphasis added). *Id.* at 722. This definition is virtually indistinguishable from the definition of legal malice found in *Sanders*, which requires a showing of bad faith or bad motive (described in *Sanders* as *malo animo*). Bad motive can be shown by proof that defendant knew his act was wrong at the time he did it. *Chapman*, a decision of the Court of Appeals, Eastern District, relied on the MAI 16.01 definition without analysis, noting summarily that MAI 16.01 "is the old definition which does not require spite or ill will." 721 S.W.2d at 188.

Legal malice is " 'simply ... a *general* wickedness or intent on the part of a person; a depraved inclination to do harm, or to disregard the rights or safety of mankind *generally*.' [citation omitted]." (Emphasis added). *Sanders*, 682 S.W.2d at 808. "Spite" is defined as "ill will or hatred *toward another.*" (Emphasis added). Webster's Third New International Dictionary 2199 (1965). The use of the word "spite" in MAI 16.01 is but an attempt to distinguish legal malice directed at mankind generally from actual malice which requires a particularized and personalized state of mind. *See Pollock v. Brown*, 569 S.W.2d 724, 733 (Mo.1978). ("In Missouri, actual malice, commonly defined as motivation by spite or ill will, is not a prerequisite to exemplary damages and legal malice, if supported by the evidence, will suffice.")

Careful analysis reveals no essential difference between the position taken by the majority at the court of appeals, requiring a showing of legal malice for the recovery of punitive damages under *Sanders*, and the reasoning adopted by the dissenters, which relies on cases which, too, require a showing of bad motive. Indeed, the very title of MAI 16.01 indicates that the instruction is a definition of legal malice.

Our opinions are written for readers trained in the law. They are conversant with the law's well-focused, but esoteric vocabulary. Ultimately, however, our decision here must be reduced to instructions that attempt to tell lay people how to weigh evidence, assess fault, and award damages, if appropriate. In order to serve this ultimate purpose, we must be mindful that jurors do not know our vocabulary. Thus, we must be careful to avoid speaking in the "shorthand" that the law's highly refined vocabulary allows, for that language carries assumptions to which lay persons are not privy.

Prior to *Sanders*, malice in law and legal malice were used interchangeably in our

law. Each referred to "the doing of a wrongful act intentionally without just cause or excuse"; this legal shorthand assumes, as some cases, like *Beggs*, say more clearly than others, that that phrase requires a bad motive evidenced by an intentionally wrongful act. But it was only in the explanation offered by courts of the meaning of "the doing a wrongful act intentionally without just cause or excuse" that any reference to a required bad motive or reckless disregard appeared. Because it speaks in legal shorthand, the definition of malice given juries in MAI 16.01 fails to explain to lay persons that a bad motive or reckless disregard for the rights of others is required.

*Sanders* understood this failure in the language of MAI 16.01. *Sanders* also properly condemned the continuing willingness of the legal community to assume that its "shorthand" was clear to all who read MAI 16.01 whether trained in the law or not. *Sanders* thus identified a level of malice that did "not require the jury to find that the defendant acted with an improper purpose," *Sanders*, 682 S.W.2d at 811. *Sanders* called this lowest level of malice, malice in law. On this basis, Missouri became the only state in the Union to recognize three levels of malice. Comment, 51 Mo.L.Rev. at 757.

### 4.

Unfortunately, *Sanders* did not clarify the applications of the disparate meanings of malice completely. That the meaning of malice has caused and continues to cause such discord among those schooled in the law, and that the language of MAI 16.01 can be subject to different interpretation by both academics, judges and lawyers, ought to cause us to consider whether either the word or the instruction serve the cause of confusion more valiantly than the cause of clarification when read for lay persons. Having undertaken the inquiry we conclude that MAI 10.01 and MAI 16.01 do not clearly articulate the circumstances justifying punitive damages in a case of

intentional tort, and hereafter are not to be used.

██ In describing conduct for which punitive damages are appropriate, the Restatement (Second) of Torts wisely eschews the use of the word malice. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." Restatement (Second) of Torts, § 908(2) (1979). We believe the Restatement properly sets out the law in language readily understood by lawyers and lay people alike. Henceforth, MAI 10.01 should read:

10.01 Damages–Exemplary–Outrageous Conduct.

If you find the issues in favor of plaintiff, and if you believe the conduct of defendant as submitted in Instruction Number —— (here insert number of plaintiff's verdict directing instruction) was outrageous because of defendant's evil motive or reckless indifference to the rights of others, then in addition to any damages to which you find plaintiff entitled under Instruction Number —— (here insert number of plaintiff's damage instruction), you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter him and others from like conduct.

Lest there be any confusion, in adopting the new instruction we do not overrule cases which have held that punitive damages require a wilful, wanton or malicious culpable mental state. The definitional concepts of those terms are included in the new MAI 10.01. Moreover, we do not intend to invent any new concept as to punitive damages by including the word "outrageous" in the new instruction. An attentive observer would note that this Court cited with approval the Restatement comment that "there must be 'some element of outrage to justify punitive damages'." *Bhagvandoss v. Beiersdorf, Inc*, 723 S.W. 2d 392, 397 (Mo. banc 1987) quoting Re-

statement (Second) of Torts, § 908(1) Comment b (1979).

### 5.

■ The trial court denied Burnett the opportunity to submit punitive damages to the jury. We need not reiterate the evidence here. The testimony at trial conflicted sharply. The jury chose to believe plaintiff's evidence. Nevertheless, defendants' arguments against the submissibility of punitive damages are couched in terms of evidence that the jury chose not to believe. If one considers the evidence in the light most favorable to plaintiff, as we must, the record contains a sufficient basis for permitting the jury to consider whether Griffith's acts were motivated by the general evil motive necessary to support an award of punitive damages. The trial court erred in refusing to submit the issue of punitive damages to the jury as to the assault and battery count.

### B.

Plaintiff argues that the trial court erred in failing to grant a new trial on the issue of punitive damages only. The court of appeals found the plaintiff's motion for new trial wanting because, under Missouri law, the court could not grant a new trial on the issue of punitive damages alone. As a practical matter, however, a plaintiff who received an actual damage verdict and who was denied the opportunity to present the question of punitive damages to the jury faces a difficult choice. Should he attempt to hold the liability verdict and the actual damage issue alone or should he seek a new trial on all issues, putting at risk both the liability verdict and the actual damage award? If he chooses the former course, does he necessarily preclude the latter?

■ In *Firestone v. Crown Center Redevelopment Corp.,* 693 S.W.2d 99 (Mo. banc 1985), we specifically noted and approved a trial court's authority and discretion to grant one new trial on the ground

that the verdict is against the weight of the evidence. *Id.* at 110. In *Firestone,* we carefully noted that the trial court's authority, pursuant to Rules 78.01 and 78.02, allows the trial court to grant a new trial "of any issue upon good cause shown, and it may be granted to all or any of the parties and on all or part of the issues after trial by jury, court or master". *Id. Firestone's* holding of a trial court's broad authority to grant a new trial is consistent with *Reyes v. St. Luke's Hospital of Kansas City,* 716 S.W.2d 294 (Mo.App.1986), which demonstrated the trial court's "duty to consider and weigh the evidence in light of its superior opportunity to hear and observe the witnesses and to give their testimony the weight and value it deserves." *Id.* at 295. *See also Lupkey v. Weldon,* 419 S.W.2d 91 (Mo.1967). Under the authority of Rule 78.01, 78.02 as interpreted by *Firestone,* the trial judge does have a general authority to grant a new trial on a single issue of punitive damages if he believes the evidence so justifies.

■ The general rule in negligence cases is that a trial court may, in its discretion, permit a new trial limited to the issue of damages when no error affects the validity of the verdict on liability. *Langhammer v. City of Mexico,* 327 S.W.2d 831, 836 (Mo.1959); *Gulley v. Spinnichia,* 341 S.W.2d 301, 307 (Mo.App.1960).

Defendants argue that this general rule in the negligence cases has no application when considering a partial new trial on the issue of punitive damages only, urging that *Panjwani v. Star Service and Petroleum Co.,* 395 S.W.2d 129 (Mo.1965), controls. In that case, the jury awarded plaintiff both compensatory and punitive damages for assault. The trial court granted a new trial on the issue of damages only, finding the verdict for actual damages inadequate and the verdict for punitive damages excessive. The defendants appealed, assigning error to the trial court's order limiting the new trial to damages alone. This Court recognized that other jurisdictions permit new trials limited to the issue of punitive dam-

ages but refused, "to anticipate or to attempt to set forth a hard and fast rule for all future cases." 395 S.W.2d at 133. Instead, the Court determined that under the circumstances presented in that case, in which questions remained as to both liability and damages, a new trial on all issues was necessary. In *Chambers v. McNair*, 692 S.W.2d 320 (Mo.App.1985), a fraud case, the jury awarded both actual and punitive damages. After disposing of the major issue of conflicting verdicts, the court recognized that the husband had been properly found guilty of fraud and awarded the new trial on damages only, both actual and punitive.

Cases refusing to permit a new trial on the issue of punitive damages alone find that "the element of punitive damage has been held to make it impossible for the jury at the second trial to give an adequate appraisal of the merits of the plaintiff's claim without the proofs to establish liability being again presented." 66 C.J.S. New Trial § 11(e)(1), 96; *Thomas v. Durham Motors, Inc.*, 389 S.W.2d 412, 416 (Mo.App. 1965); *Ackmann v. Keeney–Toelle Real Estate Co.*, 401 S.W.2d 483, 490 (Mo. banc 1966). A similar argument can be made in the majority of negligence cases in which a new trial on the issue of actual damages alone is granted. The mere fact that a new trial limited to damages only will require some utilization of the evidence supporting liability is not a sufficient reason to require a new trial on all issues. We believe that it follows that the mere fact that a new trial limited to punitive damages only will require utilization of some earlier evidence supporting the lesser degree of culpability supporting the award of actual damages is not a sufficient reason to require a new trial on both actual and punitive damages.

There was no error in the jury's finding of liability on the assault and battery count. We do not believe plaintiff must risk his verdict on that count to question the propriety of the trial court's ruling prohibiting the punitive damages submission. In our opinion, there was sufficient evidence at trial to support the submission of punitive damages. In our judgment the resubmission of the case on punitive damages only is in the interest of both judicial economy and judicial efficiency. We have long and properly placed confidence in trial judges to set aside verdicts as against the weight of the evidence. We believe that they are equally capable of determining what evidence from the prior trial is necessary to support a verdict on resubmission of the single issue of punitive damages. To the extent that any of our prior cases may be deemed to be contrary to our holding herein, they shall no longer be followed.

V.

The judgment in favor of plaintiff against each defendant on Count I for assault and battery and the actual damages awarded therefore is affirmed. As to Count I, the judgment of the trial court refusing a new trial on the issue of punitive damages alone is reversed and the cause remanded for a new trial on the issue of punitive damages only. As to Count II, the claim for false imprisonment, the judgment in favor of defendant Griffith is affirmed and the judgment against East Hills Merchants' Association and Belt Highway Investment Company is reversed; the cause is remanded with directions to enter judgment on Count II in favor of East Hills and Belt Highway Investment. As to Count III, the claim for malicious prosecution, the judgment in favor of defendant Griffith is affirmed and the judgment against East Hills and Belt Highway Investment Company is reversed; the cause is remanded with directions to enter judgment on Count III in favor of East Hills and Belt Highway Investment.

BILLINGS, C.J., BLACKMAR, WELLIVER, and HIGGINS, JJ., and HOLSTEIN, Special Judge, concur.

RENDLEN, J., concurs in part and dissents in part in separate opinion filed.

COVINGTON, J., not sitting.

RENDLEN, Judge, concurring in part and dissenting in part.

For the reasons herein discussed, I respectfully dissent from certain portions of the majority opinion. This action involves three consecutive interrelated intentional torts. They are in order of occurrence: Assault and Battery, False Imprisonment and Malicious Prosecution. Three closely connected defendants, named in each count, are: defendant # 1, the security guard (Griffith) employed by defendants # 2 and # 3 to patrol their shopping center property where the assault occurred; defendant # 2, East Hills Merchants Association (East Hills), an association of merchants in the shopping center; and defendant # 3, Belt Highway Investment Company (Belt Highway), owner of the shopping center.

## COUNT I—ASSAULT AND BATTERY

Under the assault count, the jury awarded its verdict for plaintiff against each defendant in the amount of $1,500 actual damages, but the trial court erroneously refused to submit proffered instructions on punitive damages. I concur in the decision of the majority affirming the judgment for actual damages, and reversing and remanding for trial on punitive damages. However, I do not agree and must dissent from the majority's view concerning the level of malice and heightened burden the plaintiff must assume when submitting the punitive damage issue on retrial. In this regard, I submit that plaintiff should properly be permitted to submit the existing instructions, MAI 10.01 and 16.01, for the jury's direction when deliberating the issue of punitive damages.

## COUNT II—FALSE IMPRISONMENT

In *Burnett v. Griffith*, 739 S.W.2d 712 (Mo. banc 1987) (Burnett I), this Court ruled that East Hills, and presumably Belt Highway, were entitled to judgment notwithstanding the verdict on the false imprisonment count because the claim was submitted on a theory of respondeat superior and the jury found for their employee, Griffith. This ruling rested on the holding of *McGinnis v. Chicago, R.I. & P. Ry. Co.*, 200 Mo. 347, 98 S.W. 590 (1906), which stands for the proposition that plaintiff could not recover on the theory of respondeat superior against the employers, East Hills and Belt Highway, as to this Count II, because their employee had been successful before the jury. Further, Burnett I stated that plaintiff to preserve the point of inconsistent verdicts (i.e. inconsistent as to the verdict in the assault claim) should under *Douglass v. Safire*, 712 S.W.2d 373 (Mo. banc 1986), have objected before the jury was discharged.

## COUNT III—MALICIOUS PROSECUTION

However, unlike the false imprisonment count, the malicious prosecution claim was submitted on an entirely different theory than respondeat superior. This claim was submitted on the basis of the acts of the three defendants having been the instigating forces for the commencement of a criminal proceeding (misdemeanor) against the plaintiff which terminated in favor of the plaintiff and in so doing the defendants acted maliciously without reasonable grounds when instigating that action. The jury returned a verdict on this count in favor of Griffith but against East Hills and Belt Highway for $20,000 actual damages. The trial court had erroneously refused to submit the issue of punitive damages through plaintiff's proffered appropriate instructions. The principal opinion notes that in *Burnett I*, this Court ordered the cause retransferred to the Missouri Court of Appeals, Western District, with the admonition:

> that a jury could render a verdict against East Hills, despite a verdict in favor of Griffith, if the evidence showed conduct by other officers, agents or employees of East Hills sufficient to prove the elements of malicious prosecution (slip op. at p. 5).

The same, of course, applies to consideration of the liability for defendant # 3, Belt Highway. The $20,000 verdict against East Hills and Belt Highway was properly entered notwithstanding the fact that a verdict was rendered for Griffith. This is so because (as noted above) the claim was submitted on the basis of the acts of the three separate defendants as having instigated a judicial proceeding against the plaintiff, and there is ample evidence to support the finding that East Hills and Belt Highway were involved as instigators of the prosecution. The majority erroneously declares that plaintiff did not make a submissible case as to Count III. In so doing, the majority fails to acknowledge the abundant proof revealed in the record supportive of the verdict and studiously avoids these favorable inferences which the jury could reasonably have drawn when finding for plaintiff and awarding damages against the two defendants on this count. This Court is not permitted so to do. In reviewing a trial court's ruling on a motion for judgment notwithstanding the verdict, we must examine the evidence in a light most favorable to the plaintiff and he is given the benefit of all reasonable inferences from the evidence, disregarding evidence to the contrary. *Stark v. American Bakeries Co.*, 647 S.W.2d 119, 121 (Mo. banc 1983). Somehow the majority has missed this time-honored rule which provides the inflexible standard of appellate review for our consideration of juries' verdicts.

Let us turn now to the six elements of an action for malicious prosecution and examine the evidence permitting submission of this issue.

(1) *Commencement of the prosecution against the plaintiff.* There is abundant, *undisputed* proof that the criminal prosecution of Karl Burnett occurred in the Municipal Court of St. Joseph in which he was charged, tried and acquitted for the following crimes:

*Plaintiff's Exhibit # 1*

"... that on or about the 9 day of July, 1983, at 2300 hrs., within the corporate limits of St. Joseph, at or near East Hills Shopping Center did then and there unlawfully disorderly conduct (sic) by using loud and abusive language in a public place ... in violation of Sec. 16–129B8 of the code of ordinances of the City of St. Joseph, Missouri. Case No. 00371867"

*Plaintiff's Exhibit # 2*

"... that on or about the 9 day of July, 1983, at 2300 hrs., within the corporate limits of St. Joseph, at or near East Hills parking lot did then and there unlawfully willfull misuse of premises (sic) by being on East Hills parking lot drinking beer. In violation of Sec. 16–147 of the code of ordinances of the City of St. Joseph, Missouri."

*Plaintiff's Exhibit # 3*

"... that on or about the 9 day of July, 1983, at 2300 hrs., within the corporate limits of St. Joseph, at or near East Hills parking lot did then and there unlawfully disorderly conduct (sic) by obstructing and resisting the performance of a police officers' duties when known to be such by refusing to place his hands on vehicle and [cursing the officer]. In violation of Sec. 16–129B6 of the code of ordinances of the City of St. Joseph, Missouri. Case No. 00371867.

(2) *Termination of the proceedings in favor of the plaintiff.* Karl Burnett was prosecuted as a defendant in the criminal cause # 00371867 (on charges set forth above) in the Municipal Division of the Circuit Court of St. Joseph, Missouri, and at the close of the evidence, on October 12, 1983, judgment was entered for the defendant, having been found not guilty, and he was discharged. Plaintiff's Exhibit # 10, a transcript of the criminal proceeding in the Municipal Court of St. Joseph of October 12, 1983. There is no scintilla of contrary evidence as to this element of the claim.

(3) *Instigation of the criminal prosecution by the defendants.* The majority opinion disposes of the malicious prosecution claim by asserting that the element of "instigation" by the defendants was not satisfied because there was no evidence

that East Hills and Belt Highway were involved. However, viewing the evidence most favorable to the verdict, there is ample evidence for submission of this element of the claim and accordingly to support the jury's verdict.

"To render one liable for malicious prosecution begun by another it must appear that he was the proximate and efficient cause of putting the law in motion." *Palermo v. Cottom*, 525 S.W.2d 758, 764 (Mo. App.1975). The evidence viewed in favor of the plaintiff reveals that the defendants performed "affirmative act[s] in connection with the prosecution," and that the conduct of East Hills and Belt Highway reached far beyond "[m]ere passive knowledge of or acquiescence in the acts of another." *Id.* Liability for malicious prosecution may be premised upon "affirmative action by way of advice, encouragement, etc." *Hunter v. Karchmer*, 285 S.W.2d 918, 929 (Mo.App. 1955).

There was evidence showing that it was the avowed purpose and published policy of defendants East Hills and Belt Highway that persons who *loitered*, sped, drove carelessly or otherwise caused problems on their premises should be "ticketed" and prosecuted. The written policy and stated purpose was conveyed to the city authorities in writing as early as August 17, 1981, by a letter of that date from the Vice President of East Hills (Plaintiff's Exhibit # 5) to the Chief of Police stating that East Hills and Belt Highway requested the assistance of the police department "in patrolling our parking lot and keeping it clear of vehicles and occupants that are loitering." The letter goes on to state that the defendants East Hill and Belt Highway would like violators of traffic offenses such as "speeding, reckless driving, etc." issued tickets. Consistent with this direction and request, from which may be inferred a purpose that these matters be taken to a conclusion and accused persons prosecuted, Patrolman Litton, called by the defense, testified that the owners of the shopping center "told us what they would expect …

and for us to use the city ordinance and straighten it out and that is what we did." This intent to arrest and prosecute further manifested itself when defendants East Hills and Belt Highway employed defendant Griffith to carry out their announced intent. As the proof unfolded this purpose to prosecute was not only communicated to the city authorities but the record shows the city acted affirmatively thereon and, more specifically, prosecuted Burnett (plaintiff here) in response to East Hills and Belt Highway's above described request in writing. A further factor for the jury's consideration was that East Hills and Belt Highway, after they knew the arrest of Burnett had occurred, could have at any time stopped the prosecution by simply telling the city attorney not to proceed. This they did not do.

These facts alone would seem to suffice to submit the issue of instigation, but there is more. The on-site manager for these defendants, Ms. Betty Hartman, stated the prosecution would go forward because it was time to "make an example" of persons such as Burnett. This occurred when Burnett came to her shortly after his arrest and when he had been released on bail. He tried to explain to her that there was no probable cause to prosecute but she imperiously told him the case would proceed.

The record discloses how all the foregoing facts were developed. In the examination of Mr. Pendergast, city attorney who prosecuted the criminal action against Burnett, these questions and answers appear:

Q: "If the owner does not request it or *changes his mind and gives you written documentation he doesn't wish the person prosecuted for an event* (emphasis supplied), the city would not have any individual interest in pursuing that?"

A: "That is my understanding from the police department." With this information before it, the jury knew that it was requested that there be the sort of enforcement that was undertaken here by written request of the defendants, Belt Highway and East Hills. Plaintiff's Exhibit # 5.

Additionally, in the trial of the case at bar, the city attorney, Pendergast, admitted he knew it was defendant Griffith (an employee of East Hills and Belt Highway), who had filed the arrest report which Pendergast employed as the basis for the informations filed against Burnett. He further admitted that as the criminal prosecution proceeded, East Hills and Belt Highway did not request that the proceedings stop and the jury could reasonably conclude that Belt Highway and East Hills intended that the prosecution proceed. The evidence shows those defendants did not change their clear purpose to prosecute nor request that the cause be dismissed or otherwise terminated short of final prosecution. In sum, East Hills and Belt Highway created a situation by their open-ended direction to the city authorities so the police would proceed with the prosecution of persons such as Burnett as they had specifically requested, and the city acted upon the declared statement of intent that the prosecution so proceed. The jury could conclude that defendants East Hills and Belt Highway purposefully did not withdraw the action or request its cessation which they were empowered to do by simply communicating a change of intent to the city attorney.

The fact of instigation is strengthened by testimony concerning Betty Hartman, the local manager who was employed jointly by Belt Highway and East Hills and was, as she testified, "the on-site person who took care of things there." Shortly after his arrest and release on bail, Burnett came to Hartman's office to tell of his plight and explain why there was no probable cause to proceed. He tried to show her how he had not done anything wrong and asked that they not press the charges. She replied that she had talked to Roger Griffith and was not going to change her mind about anything, and "she felt it was time to make an *example* out of *this* (meaning the prosecution of Burnett) (emphasis supplied)." Burnett, in an attempt to dissuade her, explained the hardship it would cause him and that "if she was going to take me to court, I would have to hire an attorney to defend myself." Nevertheless, the charges were pressed and he was forced to hire an attorney who represented him in municipal court and successfully defended that prosecution.

The defendants' conduct and intention, as exemplified by their on-site manager Hartman, is remarkably similar to that of the defendant in *Weniger v. Famous–Barr Co.*, 686 S.W.2d 553 (Mo.App.1985), where the plaintiff was arrested on the basis of a statement made by Famous–Barr's security guard, and when the police called Famous–Barr to ask if it would reconsider pressing charges, Famous–Barr refused to do so. There the court held that "[a]s there was a question of fact as to who instituted the suit the issue of causation was for the jury." *Id.* at 555. *See also Lipari v. Volume Shoe Corporation*, 664 S.W.2d 953, 955–56 (Mo.App.1983).

Similarly in the case *sub judice,* the actions of Belt Highway and East Hills speak for themselves. The jury could draw from the evidence the reasonable inference that the underlying instigating force was indeed the defendants, East Hills and Belt Highway, and that they were "the proximate and efficient cause of putting the law in motion." *Palermo v. Cottom,* 525 S.W.2d at 764. The principal opinion neither accepts as true the evidence supporting the verdict nor the favorable inferences that may be drawn therefrom.

(4) *Malice.* There is abundant evidence for the jury to conclude that malice was present. First, there was the express indication of malice in Betty Hartman's statement, as the on-site manager at East Hills, that she felt the matter should be pressed ahead because "it was time to make an example out of this." The requisite malice for this cause of action is that "the proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice," *Sanders v. Daniel International Corporation,* 682 S.W.2d 803, 814 (Mo. banc 1984), and Hartman's statement manifests a frame of mind and

purpose from which the jury could infer East Hills and Belt Highway's malicious intent. Further the jury could find that the assaultive conduct of all three defendants found to have occurred in Count I (the assault) supports the reasonable inference that these defendants employed abusive measures to control their parking lot rather than merely bringing to justice those whom they legitimately believed were violators of the city ordinances.

(5) *Absence of probable cause.* On this related point, the jury could reasonably have concluded that there was an absence of probable cause for the prosecution. Though the termination of the prosecution in favor of Burnett is strong evidence of the "absence of probable cause," it is not in all cases conclusive. *Young v. Jack Boring's Inc.,* 540 S.W.2d 887, 895 (Mo.App. 1976). Officer Griffith first approached Burnett on the pretense that he was willfully misusing the premises, which was defined as being on the premises and refusing to leave after being requested to do so, or congregating or loitering in groups on the shopping center premises. The favorable evidence undergirding the jury's verdict demonstrates that there was no probable cause to believe this ordinance had been violated, for Burnett was returning to his car when he met other individuals who complimented him on his car and were simply discussing the car when Griffith arrived. Burnett made an effort to leave as requested but was prevented from doing so. As to the charges of disorderly conduct by using loud and abusive language and obstructing the performance of a police officer's duties, the evidence favorable to the verdict again indicates an absence of probable cause, for Burnett testified that he did not threaten or abuse the officer and did not physically resist arrest. On the contrary, as shown by the jury's

verdict on the assault claim, Burnett was unreasonably manhandled by Griffith[1] and the jury rejected defendants' affirmative defense that Griffith "used only such force as was reasonable and necessary to arrest plaintiff." These facts are cogent to the issues of both malice and want of probable cause.

Clearly, proof of each element of malicious prosecution is to be found in the record before us. Accordingly, I must dissent from Part II of the principal opinion and conclude that the trial court did not err in denying East Hills and Belt Highway's motion for judgment notwithstanding the verdict.

The judgment of the trial court upholding plaintiff's verdict for malicious prosecution against the defendants, East Hills and Belt Highway, and the denial of these defendants' motion for judgment notwithstanding the verdict, should be affirmed. The cause should be remanded for a new trial of this count on the issue of punitive damages only, under the appropriate instruction.

---

1. The evidence on the assault count indicates that Burnett's feet were kicked from under him by Griffith, his face was smashed against the back of his car, he was manacled with his hands behind his back, and Griffith physically abused him by inserting a long flashlight between his arms and his back and painfully twisting and prying his arms upwards. The evidence further indicates that Burnett did not resist or use strong language until this pattern of abuse ensued. This evidence of malice and want of probable cause was bolstered by Griffith's mean conduct at the police station in which he seems to have spitefully raised the bond requirements on two occasions when Burnett's father tendered bond.